(23 Civil Proc. R. 161.)

COUNTRYMAN v. COUNTRYMAN et al.

(Supreme Court, Special Term, Jefferson County. July 19, 1893.)

1. GIFTS INTER VIVOS—EVIDENCE.
    Plaintiff, having received pension money, handed it to his wife, who deposited it in bank in her own name. Afterwards she bought a lot, took title in her own name, and paid for it with part of the pension money. Plaintiff and his wife then made a contract for a building on the lot, part of the price to be paid in cash and the balance by a mortgage on the premises. The cash payment was made with the pension money, and the mortgage was executed by the wife alone. Plaintiff and his wife testified that no gift of the pension money to plaintiff's wife was intended. *Held* that, as between the husband and wife, there was no gift or transfer of the title of the pension money or the property purchased with it.

2. PROPERTY PURCHASED WITH PENSION MONEY—CANCELING EXEMPTIONS.
    Making a contract for the erection of a house on land purchased with pension money, the price to be paid partly in cash and partly by a mortgage on the premises, and the execution of a mortgage pursuant to such contract, do not cancel the exemption which can be done by writing, duly acknowledged and recorded as prescribed by Code Civ. Proc. § 1404.

Action to determine the ownership of real estate, and for an adjudication as to certain liens claimed thereon. It appeared that plaintiff had received from the government a sum of money on account of the pension for services rendered as a soldier in the war of the Rebellion. Plaintiff handed $700 of the pension money to his wife, who deposited it in bank in her own name. Afterwards she bought the real estate in controversy, a vacant lot, for $250, took the title in her own name, and paid for it out of the $700 which had been handed to her by plaintiff. Plaintiff and his wife then entered into a contract with one McNulty, a contractor and builder, to build a house on the lot for $1,100, of which $500 was to be paid in cash and $600 by a mortgage on the property. The balance of $450 of the pension money remaining after deducting the $250 paid for the lot was all applied on the cash payment for the building. The $600 bond and mortgage for the balance of the price of the house were executed by the wife alone. Certain liens were filed against plaintiff's wife as the owner of the real estate, she having the legal title thereto.

Bradley Winslow, Hannibal Smith, and James A. Ward, for plaintiff.

Henry Purcell, for defendant Goodale.  ·

John Conboy, for defendant McNulty.

T. F. Kearns, for defendant Soper.

S. S. Trowbridge, for defendant Deline.

WILLIAMS, J. I think I must hold that there was, as between the husband and wife, no gift or transfer of the title to the $700 pension money, or the property purchased with it,—the lot and labor and materials put into the house. The business was very strangely done. From the first, the transaction had the appearance of a gift or transfer. The deposit of the money, the taking of the deed, the giving of the mortgage and bond, all in the name of the wife, with the knowledge and without objection of the husband, would lead naturally to the conclusion of a gift and transfer. If these parties had been interested in having the title in the wife, and they had supplemented their outward indication of a gift and transfer with their real evidence of intention, there would have been no answer to the claim of a gift and transfer. Their evidence here is, however, that no gift or transfer was intended, but the money and property were all along regarded by them as plaintiff's property —as between themselves on the face of their evidence; and considering the nature of the fund, and the strong equity in preserving that fund for the soldier himself, so as to be covered by the exemption provided by law, I do not like to hold a gift and transfer to the wife took place. She may have desired herself to get the property into her own hands, so as to preserve it as a home, but I do not like to find that he assented to a gift or transfer. So far as innocent parties dealt with her, supposing and believing she was the owner, they should be protected; but, as between the husband and wife, themselves, I must hold he has all along been the owner

of the money, and the property in which it was invested. So far as the wife has acted, it will not do to say she has acted without authority from the husband. He could not sit by, permit her to buy and take title to the lot, and give bond and mortgage in her own name, and direct about the construction of the house, and make no objections at the time, and then, when work and labor had been furnished, and money advanced upon the bond and mortgage, allege want of authority in the wife. The husband must be held bound by these acts of the wife, the same as though they were his own personal acts. In this view, the lot, before the house was built, was exempt under the statute, and the house, when erected, was, to the extent of the $450 put into it, also exempt. So that the plaintiff had a right to an exemption under the statute of the house and lot to the extent of $700,—the amount of pension money put into it. Code Civ. Proc. § 1393; Bank v Carpenter, 119 N. Y. 550, 23 N. E. 1108. In the case cited, the purchase price of the property was in part paid with pension money and the balance secured by a mortgage upon the same property. An attempt was made to sell on execution. The court decided the case upon the assumption that the property was worth no more than the amount of pension money paid and the mortgage given back; that there was or could be no surplus; and therefore the property was exempt from sale under the execution. It could not well be held that, where the whole purchase price paid or secured was not pension moneys, the exemption would cover the whole property. The exemption would, at most, be limited to the amount of pension moneys put into the property, and it seems to me, by analogy to the rule in cases of homestead exemption, the balance over and above the amount of pension moneys would not be exempt, but would be subject to claim against the owner, and a mortgage or other lien would attach to and hold such surplus. Code Civ. Proc. § 1404; Peck v. Ormsby, 8 N. Y. S. 372. I do not overlook the fact that there are provisions of the Code of Civil Procedure providing for a lien upon the surplus above $1,000 in case of homestead exemptions, but it will be remembered the homestead is made exempt by express provision of statute, while a home purchased with pension money is not. In the latter case the pension is exempt, and the courts have held a home purchased with pension money is also exempt; and thus, under the statute and decisions, a home, so far as purchased with pension moneys, is exempt like a homestead. The extent of the exemption in this case, however, is not a definite amount, as in the homestead exemption,—$1,000,—but such amount as is represented by the pension money. Beyond that amount, the money invested must be free from such exemption. To illustrate, in the Bank-Carpenter Case (above cited), suppose, at the time the execution sale was to take place, the mortgage, given as a part of the purchase price of the property, had been wholly or partly paid up from other than pension moneys, would the whole property still have remained exempt from sale on the execution? Clearly not, and in such case I see no way in which the exemption could be protected, except by regarding the amount of the pension moneys as a lien upon the

property, and permitting a sale on execution subject to such lien. The only other solution of the difficulty would be to regard the pension moneys as so mixed up with other moneys as to have lost their exempt character, the identity of the fund having been lost. I should not be willing to take this view, because the rule is that exemption statutes should be liberally construed in favor of the party claiming exemption. They rest upon a public policy, looking to the protection of the soldier and his family against improvidence and misfortune. The making of the agreement to erect the house and the giving of the mortgage did not operate to cancel the exemption under the statute. Section 1404, Code Civ. Proc., above cited, provides the only method by which such cancellation may be effected, and that any other release or waiver shall be void, and that a mortgage shall be ineffectual until the exemption shall be canceled, except to the extent of purchase money secured thereby. In Peck v. Ormsby, above cited, it was held that the language "ineffectual," etc., meant ineffectual "as to the exemption," and a mortgage would be valid, though not for purchase money, subject to the exemption.

In view of these considerations, I must hold the mortgage and liens upon this property, so far as the exemption is concerned, are valid liens upon the property, subject to the lien for the $700 purchase money. The plaintiff and his wife have put nothing into this property except this $700 of pension money. They are very likely liable upon the bond at law, but no money has been paid over by them except the $700. Whatever else has been expended on and about the place has been expended by McNulty, and advanced in money, labor, and materials by the assignor of the mortgage, and the holders of liens. This action is equitable in its nature, the plaintiff asking that equity be done him. It is a rule in equity that he who asks equity must do equity. It would not be equitable to permit the plaintiff to have a property, valuable over and above the moneys he has put into this place, and refuse to pay for the money, labor, and materials others have put into it. There is no reason why the mortgage or liens should be set aside because the mortgage was given by and the lien filed against the wife. As the owner of the property, at law she was, and still is, the owner taking and still holding the legal title. The mortgage and liens are good notwithstanding the equitable title is now held to be in the plaintiff. They cannot be set aside for this reason. All their rights, however, are under McNulty and his contract to build the house. The mortgage in Goodale's hands is no better than if it were in the hands of McNulty. It is subject to any equities in favor of plaintiff against McNulty, and the liens can, in any event, be enforced only as to any amount still owing to McNulty under the contract. We are therefore brought back to a consideration of the contract relation between McNulty and the plaintiff personally, or as represented by his wife. Great difficulty arises here in determining what the particular terms of the contract were. These contracts ought always to be in writing, and then enough difference and disagreements arise. It is unfortunate that all the details of the work should rest in conversations and negotiations, where mistakes so

frequently occur in parties understanding each other, and where, in case of litigation, ·there is so much opportunity for parties to testify untruly. Here the parties saw fit to trust their whole con·tract—all its details—to parol, and neither must complain of the court if he does not secure such a result as he regards himself entitled to. The great disagreement is as to the size of the house, and the consequent room inside. The plaintiff and his wife claim it was to be 22 feet front, and thus affording room for a hall, hall stairs and front door, and which were to be put in; while McNulty claims it was to be only 17 feet front, and no front hall, stairs, or door. It is difficult to conceive how the parties could honestly disagree in such important particulars. McNulty built the house as he claims it was agreed to be built in this respect. I only refer to this disagreement to illustrate the nature of the differences between the parties. I do not intend to go into all the details of the differences. I would not be willing to find that McNulty agreed to build so large and so complete a house as the plaintiff and his wife claim for $1,100, because such a house would cost very much more than the price agreed upon,—very likely twice as much. Such a contract would not be reasonable or probable. On the other hand, McNulty did not treat the plaintiff fairly. The work, even on his own claim as to a kind of house he was to build, was not well or properly done, and the material was not of good or proper quality. I recognize the fact that good work and material for such a priced house as this one was to be is not the same kind of good work and material that would be expected for a $5,000 or $10,000 house, but the material should be at least fair, and not worthless, and the work should be well done, and not a shabby job. Then, again, McNulty, fairly within the agreement, was to have the money paid him, and the mortgage furnished to get money or to purchase the materials and employ the labor upon this house as necessary as the job progressed, and yet, before he had done much of anything to the house, he had managed to get all the money except $50 and the mortgage, and an advance upon that of $175, showing an unfair way of dealing with the plaintiff and the job. Now, without going into details, I am inclined to hold that the contract to build the house has been substantially performed under the rule of law; that in such case damages should be deducted from the contract price on account of the work left unperformed or improperly done, and the contractor not held to have failed to perform his contract so far as to permit a recovery at all. This seems to me in accordance with equity. The plaintiff has the house, such as it is, and is enjoying it. He ought not to have it without paying what is fair and right; and if he prefers to give it up, and take his money he has paid in, he is able to do it. I am inclined to find that McNulty has been paid all he is entitled to under the contract, having received in cash from plaintiff $450, and from Goodale, under the mortgage, $436.80, besides the amount allowed Goodale on the purchase of the mortgage; say, in all, $460. These are the figures stated by counsel in their briefs. That he is entitled to nothing under his lien, nor are the other lien holders. That Goodale is entitled to hold and

enforce his bond and mortgage for the $460, subject, however, to plaintiff's claim for pension money,—$700,—interest to be allowed on both these amounts from the times the moneys were advanced. The decree will then provide that the property belongs to plaintiff, and the title thereto be conveyed to him by his wife; that the property in plaintiff's hands is exempt from seizure in any legal proceedings to the extent of the $700 pension money paid thereon by plaintiff; that Goodale has a valid mortgage thereon for the $460, subject to the claim of $700; and that the other defendants have no interest in the property under their alleged liens.   No costs will be allowed against any of the parties personally.   The stenographer's minutes should be paid for by plaintiff, as he has title to the property subject to Goodale's mortgage.   I should say that Goodale should have a sale of the property, under his mortgage in this action, to save him further expense, unless plaintiff shall pay up what is already due upon the mortgage, and the charges for stenographer's minutes.   In case of a sale, it may be of the whole title, and, from the proceeds, plaintiff should be first paid, then Goodale his mortgage, then stenographer's minutes, then Goodale's costs as of foreclosure, and surplus, if any, should be paid to county treasurer. These are merely suggestions as to final decree, about which, however, I will hear counsel before signing decision.   Counsel will prepare formal decision, and agree upon its form, and present for signature.