### McMAHON v. COOK, Sheriff.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1905.)

1. ESTOPPEL—TO CLAIM EXEMPTION.

A surety on a bond to secure release of a convicted person is estopped to claim property to be exempt as against the judgment obtained on the bond, he having in his affidavit of justification, with knowledge of the exemption, which was not known to those with whom he was dealing, and with an understanding of his affidavit, given such property as part of what he was worth above his debts and exemptions.

2. SAME.

Code Civ. Proc. § 1404, providing that exemption of real estate may be canceled in a certain way, and that any other release or waiver of an exemption is void, does not prevent one from estopping himself to claim property as exempt.

3. SAME—PLEADING.

A judgment creditor, to be entitled to sale on execution of property of the judgment debtor, on the ground that he was estopped to claim it as exempt, need not, in the action in which the judgment was obtained, have made any allegations of fraud against defendant.

Appeal from Special Term, Oswego County.

Action by Mary McMahon, individually and as administratrix of James King, deceased, against Elden H. Cook, as sheriff of Oswego county. From a judgment for plaintiff by which a levy of execution by defendant on real estate formerly belonging to said

King was set aside and sale of it on execution was permanently enjoined, defendant appeals.   Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Udelle Bartlett, for appellant.

Francis E. Cullen, for respondent.

HISCOCK, J.   The people of the state of New York secured a judgment against King and three other sureties upon a bond for $1,528.04, and execution was issued to the defendant, and he proposed to collect the same out of some real estate belonging to King at the time said judgment was obtained and docketed.   The trial court granted the judgment above referred to, enjoining said sale upon the ground that the real estate was purchased by King with pension money, and was therefore exempt from levy and sale.   We think that King, and the plaintiff, as his representative and grantee, were estopped by what took place when the bond was executed from making this claim, and that the judgment was erroneous. While the findings of the trial court are brief, there is practically no dispute about the actual facts in this case, many of the important ones being expressly stipulated by the plaintiff.   One Mullen was convicted of the crime of assault, and sentenced to state's prison. A certificate of reasonable doubt was procured, and an appeal taken from said judgment of conviction to the Appellate Division.   Thereafter, to secure Mullen's release from prison pending said appeal, King and three others, as sureties, duly executed an undertaking of bail whereby they jointly and severally undertook that Mullen would in all respects abide the order and judgment of the Appellate Court, and would surrender himself in execution upon the judgment upon its being affirmed.   Said undertaking was conditioned for the payment of $1,500 in case of his failure so to do.   Said judgment was affirmed, but the criminal escaped, and the sureties have failed to comply with their undertaking, and judgment was duly obtained against them for the amount of said bond, interest, and costs by the people of the state of New York, and it is the execution upon said judgment against King and others whereof stay has been sought and granted in this action.   It sufficiently appears without dispute that at the time said undertaking was executed by King he owned and held the title to a piece of real estate which had been purchased with pension money, and which is the only property involved here.   In his affidavit of justification upon said undertaking he swore that he was "worth the sum of fifteen hundred dollars over and above all debts and obligations and property exempt from levy and sale under an execution," and that his said property consisted, amongst other things, of the piece of real estate herein mentioned. It is expressly conceded that said undertaking was accepted and approved, and the convicted person discharged from custody upon the faith of said undertaking and in reliance upon the truth of the above statements and representations made by said King.   It also appears that the execution cannot be collected out of property other than said real estate.

The pensioner, upon the trial, did attempt to take the position that he did not understand the meaning of his affidavit of justification upon the subject of exemptions. Upon the other hand, however, he allowed to go without contradiction evidence that at the time he executed the undertaking and made his affidavit he stated, in substance, to the attorney preparing the same, that this property was exempt, and could not be held, but was told to proceed, and say nothing about the matter. The trial justice has not found any such ignorance as claimed on the part of the surety, and it manifestly did not exist. We therefore have it that the plaintiff, concededly occupying no better position than King, has come into a court of equity seeking to maintain this action by the assertion of a right which was expressly disclaimed for the purpose of procuring action by the representatives of the people, and after the latter have in fact acted in an important matter in reliance upon such representations in a manner which will leave public rights without any adequate remedy if plaintiff's contention is allowed. We regard it as too well settled to require the citation of authorities that an individual who, under ordinary circumstances, made a representation as to the ownership, title, or freedom from incumbrance of a piece of real estate for the purpose of procuring another to act in reliance thereon, would not be permitted after such action by such other persons in reliance upon such representations to assert the contrary thereof. Neither can this case be maintained upon the ground that the statement in the justification was a mere expression of an opinion of law, which could not be the basis of an estoppel. The facts which made the property exempt were within the knowledge of King, and not within the knowledge of those with whom he was dealing, and there was no doubt or uncertainty about the provisions of law which created the exemption. Under such circumstances, the statement, if binding in other respects, would be a sufficient statement of his rights and of the facts to protect another who had acted upon the faith thereof. Storrs v. Barker, 6 Johns. Ch. 166, 10 Am. Dec. 316; Hawley v. Griswold, 42 Barb. 18; Tilton v. Nelson, 27 Barb. 595. The only question which, as it seems to us, is at all doubtful or requires consideration, is the one whether the statutes upon that subject have so secured to the pensioner this pension money or property purchased therewith that he cannot debar himself from asserting his right by any such circumstances as would ordinarily make an estoppel. As already indicated, we do not think that this result has been accomplished. After the sections of the Code making real estate purchased with pension money exempt comes section 1404, with reference to the cancellation of exemptions thereof. This section provides that:

"The owner of real property exempt as prescribed * * * may at any time subscribe a notice, and personally acknowledge the execution thereof, * * * to the effect that he cancels all exemptions from levy or sale by virtue of an execution affecting the property, or a particular part thereof, fully described in the notice. The cancellation takes effect when such a notice is recorded, as prescribed. * * * Any other release or waiver hereafter executed, of an exemption of real property, allowed by this article, * * * is void."

A conveyance or mortgage, however, by the husband and wife jointly, is valid. This statutory provision is of interest in this discussion in at least two ways. It has been argued that it was the policy of the law to secure the pensioner in his exemptions and to prevent him from stripping his family as well as himself of property by improvident transactions. This section, however, discloses that the Legislature did not feel able to secure him in any such broad way as has been claimed, but expressly permitted him at any time to cancel and renounce the benefit of his exemptions by executing an instrument to that effect. In the second place, it is urged that the section quoted pronounces invalid any form of release or waiver except that expressly prescribed, and that this provision excludes the idea of an estoppel such as is claimed by the defendant herein. It does not seem to us that there is any analogy between the principles applicable under this provision of the Code to a cancellation, release, or waiver of a right to exemption and those applicable in this action to the subject of estoppel. In the former case the right of exemption is asserted and understood by all parties to exist, and the only consideration is how that right, plainly and openly existing, shall be cut off, and the statutory provisions tell how it shall be done to the exclusion of any other method. In the case of estoppel such as is before us the question is not of cutting off a known right, but whether a party in his dealings with others has so denied and concealed his right that he will not thereafter be entitled to assert it. · The statute does not seem to us to make any provision upon this subject which directly or indirectly by any reasonable process of implication and construction can be extended to the latter situation, but to leave it to be solved by the ordinary principles of law and equity. Beyond doubt all of the elements are present in this action which would create an equitable estoppel as between ordinary individuals dealing with reference to an ordinary piece of real estate, and we do not believe that it was the policy of the law upon this subject to drag down the most ordinary and well-founded principles of equity, or to protect the pensioner at the expense of good morals and simple justice. It was the intention of the statute to protect him as far as practicable from the evil designs of others, or from his own improvidence and sudden temptation, and for this reason he was required to observe certain forms before property known to be exempt could be relieved from such exemption; but if he desired to he had the right to deal with his property under these forms freely and without limitation. Having this right to relieve his property from the exemption, it seems to us a reasonable conclusion that he might excuse others from insisting upon these forms by himself denying the existence of the facts which made them necessary. When plaintiff's intestate offered himself as a surety, he could have qualified himself with reference to the property in question if he had truthfully disclosed the facts of its exemption by executing a release or cancellation of the kind indicated, and his property then would have been subject to the execution. We think he was able to make his property just as much liable to the execution by denying the existence of the facts

which made the property exempt, and thus preventing the people from insisting upon the necessary instrument of cancellation. It is said that, if an estoppel may be created by a pensioner against asserting his right to exemption, then an easy way will be open of debarring both him and his family from the enjoyment of the rights which have been secured to them. It may be answered that in this particular case—which is all we have to decide—the means which were taken to estop the privileged person from asserting his privileges were quite as formal and formidable as would have been required to make a cancellation under the Code. But, if it were necessary to go further, we should refer to the fact that the counsel for the respondent has not called to our attention any case which seems to hold that it is a matter of public policy to protect a privileged person under all circumstances and at all hazards from the result of his own fraudulent or deceitful conduct. It was the undoubted intention of the Legislature, as it ought to be, to protect the pensioner and his family within all reasonable limits from evil schemes and improvidence, but it would be unreasonable to extend this policy so far as to permit him to deceive and mislead others. Fritz v. Worden, 20 App. Div. 241, 46 N. Y. Supp. 1040. A question very nearly akin to the one involved here was settled in the case of Moore v. Wescott, 22 Wkly. Dig. 515. In that case the owner of premises exempt as a homestead procured a loan upon mortgage, and for the purpose of doing this stated that he had a perfect title to the premises, and that there were no liens or incumbrances of any kind thereon. It was held under such circumstances that he should not be afforded the opportunity of setting up in a foreclosure action a defense that said property was exempt; that, even if the opportunity were given to so answer, he would be equitably estopped from setting up the statutory homestead exemption against the mortgage.

Some cases are cited by the learned trial justice in his opinion as sustaining the conclusion reached by him. We think, however, that they are not applicable to the facts before us, and that reference need be made to only two of them. In the case of Robinson v. Wiley, 15 N. Y. 489, a majority of the court did not agree upon any of the propositions expressed, and so much of the opinion as stated that a case of estoppel had not been made out against the assertion of the exemption therein specified did so upon the grounds, first, that the language used by the owner of the real estate was not broad enough to cover such exemption, and, secondly, that there was no finding that the representations were made with the fraudulent intent of causing the belief that no exemption existed. In the case at bar there is no question but what the language used by King was broad enough to cover the subject of the exemption of the real estate in question, and the undoubted facts show that the representations were made for the purpose of deceiving and misleading the people. In the case of Countryman v. Countryman (Sup.) 28 N. Y. Supp. 258, no question of estoppel was raised or discussed.

It is also suggested that in some way the right to enforce judgment against the property has been lost, because plaintiff in the original action upon the undertaking did not insert some allegations

of fraud against plaintiff's intestate. We are unable, however, to see how this was necessary, or how the failure so to do has affected any rights under the execution. The only object in inserting such allegations in the original action would have been to lay the foundation for certain increased rights under said judgment against the surety personally. No manner is indicated to us in which a judgment procured after such additional allegations would have given any greater rights of enforcement against the real estate. The judgment obtained in any event would have been an ordinary money judgment, to be enforced against property by execution. The considerations urged in behalf of the plaintiff relate to the enforcement of the judgment, rather than to its form or nature. Plaintiff, in procuring it, was not bound to anticipate or avoid the claim of exemption by alleging King's conduct. It is sufficient for it to do this and meet the claim when it is urged as a basis of defeating collection of the judgment.

The general principles applicable to a suit in equity are very familiar. It is a well-understood principle that a plaintiff who seeks the aid of a court of equity must not base his prayer upon conduct or claims which are inequitable and unjust towards others. This suit is clearly in violation of that principle, and for that and other reasons stated must fail.

Judgment reversed, and new trial granted, with costs to appellant to abide event upon the law and the facts. All concur.