# THE

# MISCELLANEOUS REPORTS

OF THE

## STATE OF NEW YORK

COMMENCING NOVEMBER, 1925.

In the Matter of the Accounting of MILTON C. EKINS, as Committee of JESSIE F. EKINS, Incompetent.

Supreme Court, Erie County, November 27, 1925.

Husband and wife — earnings of husband and wife and legacies received by her deposited in her name constitute community fund in which both are jointly interested — incompetent persons — wife judicially declared insane and husband appointed committee of her property — husband not estopped from claiming interest in securities purchased by community fund by statement in proceedings in adjoining State to secure possession of said securities that wife was owner thereof.

The earnings of a husband and a wife, and legacies received by her, deposited in savings banks in her name, constitute a community fund in which both the husband and the wife are jointly interested, where it appears that it was inconvonient for the husband, being a railroad man, to handle the finances of the family; that he turned his wages over to his wife, retaining sufficient to pay incidental personal expenses; that she deposited their joint earnings in savings bank accounts in her name; that there was no evidence that he ever promised that the money paid over to his wife should belong to her absolutely; and that she had stated that said money was turned over with a view of ultimately purchasing a home for them both.

The husband is not estopped from claiming his interest in securities in which said community fund had been invested, by the fact that in proceedings, brought by him in an adjoining State as committee of the property of his wife, he stated that she was the owner of said securities. Said proceedings were in the nature ancillary to those had in this State by which the husband was appointed committee.

While the husband's statements are competent evidence against him, they are not conclusive and are subject to explanation in later proceedings.

PETITION by person, formerly insane, for an accounting by the committee of her property.

*Howard R. Sturtevant,* for Milton C. Ekins.

*Elijah J. Holt* and *Wm. H. Cary,* for Jessie F. Ekins.

CHARLES B. WHEELER, Official Referee.   The following are the essential facts as shown by the evidence given before the referee.

Mr. and Mrs. Ekins were married in 1896.   At the time of his marriage Mr. Ekins was in the employ of the New York Central Railroad Company as a freight conductor receiving a comparatively small monthly wage.   His earnings at that time could have been little more than sufficient to meet the monthly household expenses. Since his marriage he has remained in the employ of the Central railroad, and been advanced in his position from time to time until he is now conductor on the Twentieth Century Limited express.   With his advance came an increase in wages, and at the present time he is earning a salary of $250 per month.   Sometimes his earnings exceed that sum when he is called on to make extra runs.   Before her marriage Mrs. Ekins was a dressmaker, and after her marriage took into her home dresses to be made for others, and testified on this hearing that she continued this practice for some ten years after her marriage, earning in that way about $150 per year or in the aggregate about $1,500 in all.

As Mr. Ekins' employment took him away from home it was his custom upon receiving his wages to turn them over to his wife for the purpose of meeting the household and living expenses, retaining just sufficient pocket money to pay his incidental personal expenses.   In doing this the evidence of Mrs. Ekins is that he said to her to save what she could out of the moneys received by her.   The undisputed evidence is that Mrs. Ekins used the moneys received in that way.   She paid the rent, fuel and light bills, grocery bills, and paid for clothing purchased by both.   This method of handling earnings received appears to be a common practice among railroad men.   It does not appear from the evidence that Mr. Ekins ever promised the money paid over to Mrs. Ekins should belong to her absolutely, or that he made her a present of the same.

The time came, however, when a savings bank account was opened.   The two went together and opened a bank account in Mrs. Ekins' own name, and thereafter for many years savings bank accounts were kept in various banks and institutions, all in the name of Mrs. Ekins.   In these accounts were deposited from time to time such money as was saved by the parties.   Mrs. Ekins received during this time a couple of legacies from aunts, each of about $400, and these legacies went into the same account.   It would seem too that any earnings received by Mrs. Ekins from dressmaking or what was saved by her from such earnings also went into the bank without distinction as to the source from which they were derived.

There came a time when investments were made in stocks and in bonds. These investments were as a rule, for a time at least, discussed by Mr. and Mrs. Ekins before purchases were made. When stock was purchased the certificates were issued to Mrs. Ekins in her name, and the money to pay for them was taken from the banks where deposited.

In the case of the purchase of certain shares of the stock of the New York Central Railroad Company Mr. Ekins contributed some $300 to make up the required sum. The amount of the bank deposits was increased by interest credited on the account or accounts, and also by deposits of dividends received and interest on bonds bought.

For a number of years the parties lived in the city of New York. From all that appears they lived happily together. But in September, 1922, Mrs. Ekins, without saying anything to her husband, left him. She later went to her relatives, living near Boston, taking with her the securities the subject-matter of this inquiry and placed them in a safe deposit box in the Old Colony Trust Company.

In 1923 Mrs. Ekins was declared insane, and committed to an institution for the insane in Massachusetts. Subsequently she was transferred to the Buffalo State Hospital for the Insane, and upon the application of the hospital authorities a committee of her property was appointed. Her husband was named as such committee, and assumed the duties of the appointment. He obtained by order of the Probate Court of Massachusetts possession of the securities taken by Mrs. Ekins to that State when she left him.

Mrs. Ekins has since been found sane and discharged from the State hospital.

She has not, however, returned to live with her husband, and is now living apart from him.

She petitioned this court for an accounting by her husband as committee of her property. The husband has rendered such an account, but in so doing alleged in substance that since his marriage to Mrs. Ekins he had turned over to his wife his entire earnings except such necessary and incidental expenses incurred by him while on the road, and continued to do so until October, 1921, and that the property standing in her name, other than the sum of $1,500, represented his earnings with interest thereon, and that such moneys placed in her hands were so placed with the understanding and agreement that they were to be invested and held in her name for the joint use and benefit of the two.

He, therefore, asked that the interest of his wife in the property which came into his possession as committee be judicially determined

and apportioned.   The attorneys and counsel for the respective parties, waiving matters of jurisdiction, consented that an order might be made referring it to this referee to hear and pass on the questions involved, and this court thereupon made such an order.

It is urged by counsel for Mrs. Ekins that her absolute right to the funds and securities in question have been passed or adjudicated in certain proceedings had in the course of the administration of the property by Mr. Ekins as committee, and such adjudication is final and conclusive against him, and he is now estopped from asserting any interest or ownership in the property.

It appears that when Mrs. Ekins left her husband and went to Massachusetts she took with her these securities and placed them in a safe deposit box in the Old Colony Trust Company in Boston in her own name.   She was subsequently committed to an institution in Massachusetts as a person of unsound mind.   Subsequently she was transferred from this institution and committed to the Buffalo State Hospital.   Thereupon the authorities of the State hospital petitioned this court for the appointment of a committee and Mr. Ekins was appointed such committee.   Thereafter Mr. Ekins went to Massachusetts and instituted proceedings in the Probate Court of Suffolk county in that State for the purpose of obtaining possession of the securities in question.   He signed and verified a petition to that court setting forth his appointment as committee here, and alleged Mrs. Ekins, the incompetent, was the owner of the following securities, to wit,  twenty-five shares New York Central Railroad Company; seventeen shares Baltimore and Ohio Railroad Company; one $1,000 bond Bush Terminal Building; $5,700 United States Liberty Bonds.

Thereupon the Probate Court made an order giving Mr. Ekins, as committee, possession of the securities named and permitting him to take the same from the State of Massachusetts.   With this authority he took the securities into his possession.

By reason of these proceedings counsel for Mrs. Ekins contends that her rights as owner of these securities have been finally adjudicated and are not now open to inquiry.   It is clear it was the duty of the committee to obtain possession of the securities.   They stood in Mrs. Ekins' name.   The safe deposit box was rented in her name.   She was the legal, if not the equitable owner of the securities.   It is difficult to see how the committee could obtain possession except by the proceedings taken.

By asserting in his petition her legal ownership did he preclude his asserting equitable interest in the property?   Of course the statements contained in the petition are competent evidence against him, and may be used as such.   But the question remains whether

such statements are conclusive, or are they subject to explanation in other and later proceedings where the truth may be ascertained? We think the case of *Hughes* v. *Jones* (116 N. Y. 67) is decisive of the question. It was there held that although in a proceeding asking that a person be declared incompetent the petitioner declared in his petition the alleged incompetent was insane at a stated time, and he was so found, nevertheless that did not preclude the petitioner from subsequently showing that at the time stated the person found incompetent was in fact sane, and capable of executing to the petitioner a deed of conveyance of certain real property the title to which was the subject of litigation.

In this case proceedings had in the Probate Court of Massachusetts were in nature ancillary to those had in this State by which Mr. Ekins was appointed committee.

The referee reaches the conclusion that the proceedings had in Massachusetts do not estop or preclude Mr. Ekins from showing on this hearing the real facts touching the property in controversy. As to them while the evidence shows some minor differences the main and governing facts are practically the same as stated by both parties to the controversy in their testimony, and it simply remains for the referee to declare from such testimony such conclusions of fact and law as in his opinion the evidence justifies.

From the foregoing recital of facts I think the referee is justified in finding as matter of fact and of law that the savings of Mr. and Mrs. Ekins constituted what may be termed a common or community fund in which each party was and is jointly interested, to be drawn on by each as their necessities required. As matter of fact that was the way these funds were treated.

I am unable to find from the evidence that it was the intention of Mr. Ekins to give his wife absolutely whatever was saved from his earnings. Considering the close relationship existing between husband and wife and the circumstance that the husband's business took him from home a good share of the time so that it was inconvenient for him to handle the payment of household bills, and the declarations of Mrs. Ekins that she was saving money with the expectation of some time buying a home for herself and husband, and the fact that in most cases of investment she consulted her husband as to what should be bought, I can only reach the conclusion that Mrs. Ekins was made custodian of their joint savings with the understanding and intention it should in equity belong to and be enjoyed by them jointly. I think this consideration applies to what Mrs. Ekins got and saved from her dressmaking during marriage, and should be treated just the same as the moneys given her from Mr. Ekins' earnings as a railroad man. I am also

of the opinion that the same thing applies to the legacies received by her above mentioned. These were deposited in the same way that Mr. Ekins' earnings were deposited in the bank or banks and commingled with his earnings. It was evidently intended all these moneys, whether derived from his earnings, or from her earnings, or from legacies, should go into the common fund for their joint benefit. It is inconceivable that Mr. Ekins ever intended to give to his wife absolutely his life earnings or that Mrs. Ekins could have so understood. The evidence is that she stated to her friends and acquaintances that the money was turned over with a view of ultimately purchasing a home for them both, and that places were at times viewed to that end although none were bought, and that these moneys were drawn on from time to time to meet running household expenses.

The referee is unable to reach any other conclusion than that these moneys and securities should be treated in their nature as a community fund in which each party is equally interested, and should be divided between the parties one-half to each. We believe that such a disposition is most generous toward Mrs. Ekins.

In the course of the discharge of the writer's duties as official referee he had before him for decision a case where the facts were substantially the same as those presented on this hearing in which case the referee rendered a decision holding as he now holds in this case. (See *Phillips* v. *Phillips*, not officially reported.)

There are numerous authorities bearing directly or indirectly on the question as to whether moneys turned over to a wife by a husband under circumstances such as appear in this case are to be treated as a gift.

In 21 Cyc. 1296, it is stated that " The fact that the husband handed to his wife all his earnings from week to week from which to pay the family expenses does not constitute a gift to her of any surplus over such expenses." (Citing in support of the statement, *Fretz* v. *Roth*, 68 N. J. Eq. 516; 59 Atl. Rep. 676.)

Under such circumstances the inference is that the money still belongs to the husband. (*Rodgers* v. *Campbell*, 4 Penn. Dist. 614; *Lane* v. *Lane*, 76 Maine, 521; *Countryman* v. *Countryman*, 28 N. Y. Supp. 258; *Neufville* v. *Thomson*, 3 Edw. Ch. 92.)

We are of the opinion, therefore, that both on the facts and the law as presented in the case in hand the result reached by the referee in this case is the proper disposition of it.