ESTATE OF BUDNEY: HENDRICKSON, Appellant, vs. BUDNEY, Administrator, Respondent.

*November 7—December 3, 1957.*

For the appellant there was a brief by *Benson, Butchart, Haley & Benson* of Racine, and oral argument by *Donald A. Butchart.*

For the respondent there was a brief and oral argument by *William J. H. Evans* of Racine.

MARTIN, C. J.   It is established by the evidence that the source of the money found in the home was William Budney's earnings.   He testified that the decedent had no estate of her own when he married her, that she had not received any inheritance, that he did not think she had received any divorce settlements from her previous husbands, that she never worked during their thirty-three years of married life. These facts are not denied by the petitioner; in fact, they are corroborated by her testimony.

Budney further testified that it was his practice to cash his weekly pay check and give the money to his wife; that

"Whatever she done I was pleased.   She was a faithful wife to me.   We never discussed money at all."

Petitioner assumes for the purpose of argument in this court that the deceased had exclusive possession of the money and from that the presumption follows that it was her property.   We cannot agree that Mrs. Budney had exclusive possession.   Budney testified he knew there was money in the house but he did not know how much because they never

discussed the subject. The evidence shows that it was found in many places, such as the cookie jar, the bedroom dressers and wardrobe, which were used by both husband and wife. It was as much in his possession as in hers. A $25 war bond in Budney's name was found in a sewing cabinet; several envelopes containing money were also found, marked in the decedent's handwriting as Budney's "vacation pay" and "army money." Petitioner makes quite a point of the fact that Budney was very surprised when the money was discovered. It is her testimony that he was surprised; Budney testified that he knew there was money in the house, though not how much. The amount of it may well have surprised him, but this is not proof of exclusive possession.

Nor can it be held that William Budney made a gift of the money to his wife when he handed her his weekly earnings.

"Clear and uncontroverted evidence, and not a mere intrusting, is necessary to establish a gift from a husband to his wife." 26 Am. Jur., Husband and Wife, p. 721, sec. 95.

While Budney testified that he "gave" his wages to the decedent, it is apparent from his testimony that he never intended a gift; that he merely intrusted his earnings to her to run their household, pay their bills, and save what remained. He was pleased with the way she handled their affairs and never questioned her about the money. There is no evidence whatever that he intended it as a gift to her.

Petitioner argues with some vigor that William Budney's testimony was "a labyrinth of evasion." The argument goes to Budney's credibility—a question for the trial court—and was answered in the decision as follows:

"He is a shop wage earner with no more than the average laborer's intelligence. He was nervous on the witness stand and certainly he was frequently confused. On several occasions when he refused to answer he thought that counsel was prying into his personal affairs and when instructed to an-

swer he would do so immediately. He was not always consistent in his answers but I believe it was due to the fact that he was agitated and confused rather than to any deliberate attempt to give false testimony. He was examined adversely and counsel was permitted great latitude without objection."

The trial court was not so impressed with respect to the veracity of the petitioner.

There is ample evidence in the record to support the trial court's finding that the money found in the Budney home was the property of William Budney. It is, therefore, unnecessary to discuss the question as to the amount thereof.

*By the Court.*—Judgment affirmed.