Estate of Gray: Gray, Appellant, v. Schultz, Executor, and another, Respondents.*

*March 3—March 30, 1965.*

---

\* Motion for rehearing denied, with costs, on June 1, 1965.

206

For the appellant there was a brief by *Wambach & Knueppel*, attorneys, and *Lichtsinn, Dede, Anderson & Ryan* of counsel, all of Milwaukee, and oral argument by *Eldred Dede*.

For the respondents there was a brief by *Laikin, Swietlik & Peltin*, attorneys, and *Joseph I. Swietlik* of counsel, all of Milwaukee, and oral argument by *Joseph I. Swietlik*.

GORDON, J. On November 22, 1957, an account in the sum of $29,527.90 in the sole name of Mildred Gray at the Ladish Employees' Credit Union was changed so that thereafter it contained the names of both Mildred Gray and her husband, Otto L. Gray. The signature card, which they both signed, was entitled, "Joint Account Agreement," and it provided that the credit union was "authorized to pay any amount standing to the credit of the above account to or upon the order of either or both or the survivor of either of us."

There is a presumption that a joint tenancy was intended by this transfer to joint names. Sec. 230.45 (2), Stats., provides as follows:

"Any deed, transfer or assignment of real or personal property from husband to wife or from wife to husband which conveys an interest in the grantor's lands or personal property and by its terms evinces an intent on the part of the grantor to create a joint tenancy between grantor and grantee shall be held and construed to create such joint tenancy, and any husband and wife who are grantor and grantee in any such deed, transfer or assignment heretofore given shall hold the property described in such deed, transfer or assignment as joint tenants."

The form of the joint account is not conclusive as to what the parties intended, as this court noted in *Estate of Kemmerer* (1962), 16 Wis. (2d) 480, 487, 114 N. W. (2d) 803. Nevertheless, there is applicable our holding in *Estate of Pfeifer* (1957), 1 Wis. (2d) 609, 612, 85 N. W. (2d) 370:

"Although the form of the account is not conclusive, as we said in the cases, *supra,* an account opened in joint names raises a rebuttable presumption that the creator of such an account intended the usual rights incident to jointly owned property. . . ."

In the *Pfeifer Case,* at page 613, we also pointed out that to overcome the rebuttable presumption of the joint account, the challenger must present evidence which is "clear and satisfactory." See also *Estate of Michaels* (1965), 26 Wis. (2d) 382, 390, 391, 132 N. W. (2d) 557. In *Estate of Roth* (1964), 25 Wis. (2d) 528, 533, 131 N. W. (2d) 286, we used the words "clear and convincing." Whether the presumption of joint tenancy arises by reason of the statutory declaration of sec. 230.45 (2), Stats., or whether it arises by reason of the terms of the deposit agreement, such presumption can be rebutted only by clear and satisfactory evidence.

There is evidence that, subsequent to the time she added her husband's name to the account in 1957, Mildred Gray desired to alter it. Her withdrawal of the entire proceeds in May, 1962, demonstrated her decision to end the joint account.

However, there is no clear and satisfactory evidence that on November 22, 1957, when this account evolved, Mildred Gray intended to establish anything other than a joint account. So far as her joint tenant is concerned, her efforts to alter the nature of the account after it was in existence are not controlling; the governing intention which the court must determine is that which prevailed on November 22, 1957.

The trial court found that Mildred Gray added her husband's name to the account "with the intention of reserving to herself the right to eliminate his name from said account at any time without procuring his consent." The record is devoid of sufficient proof to support this finding. Presumptively, a joint tenancy was created; even though Mildred

Gray personally handled all transactions with the credit union both before and after the creation of the account and even though she made all the deposits, such acts do not show that her intention at the time she created the account was other than to establish a joint tenancy.

The respondents rely upon *Zander v. Holly* (1957), 1 Wis. (2d) 300, 84 N. W. (2d) 87. In that case, there were facts which clearly showed that there was no intention to create the normal type of joint tenancy. In the *Zander Case*, an aunt was of advanced years and in feeble health; her niece testified that it was understood that she, the niece, was to have no interest in the property except upon her aunt's death. The court concluded that a survivorship, but not a true joint tenancy, was intended (p. 313). In the case at bar, there is no evidence from which it could be concluded that Otto Gray was barred from making withdrawals or from fully enjoying the account as a joint tenant. In fact, he testified that he was empowered to make withdrawals.

Mildred Gray's withdrawal of the entire proceeds in May, 1962, was an act which she was empowered to do so far as the credit union was concerned. However, in regard to the rights of her husband, she was not empowered to terminate or transfer his portion of the joint account. In *Estate of Schley* (1955), 271 Wis. 74, 81, 72 N. W. (2d) 767, Mrs. Schley had certificates of deposit issued payable to herself or her husband or to the survivor. The court pointed out that although she:

". . . had the power to withdraw said funds, she did not have the power or right to appropriate and thereby destroy her husband's interest therein. When she made such withdrawals without the consent of her husband her acts severed the joint tenancy but did not destroy her husband's joint and equal interest therein. Those funds, once payable to either or the survivor, can now be traced. . . ."

See *Bassler v. Rewodlinski* (1906), 130 Wis. 26, 109 N. W. 1032; *Estate of Hoffman* (1940), 175 Misc. 607, 25 N. Y. Supp. (2d) 339; *Marrow v. Moskowitz* (1931), 255 N. Y. 219, 174 N. E. 460. See also 161 A. L. R. 80.

By withdrawing the entire account, Mildred Gray severed the joint tenancy, but, in our opinion, she did not thereby deprive her husband of his 50 percent interest. Since the funds in this case can be traced, Mr. Gray is entitled to one half of the account as it existed at the time of the severance. Thus, Mr. Gray is entitled to one half of $35,141.08, or $17,570.54, plus interest earned on the latter figure while such fund remained with the credit union; from the date that such money was paid to the executor, Mr. Gray is entitled to interest at the legal rate.

*By the Court.*—Judgment reversed, and cause remanded for proceedings consistent with this opinion.