RASMUSSEN (Harold), Individually and as Administrator, Appellant, v. OSHKOSH SAVINGS & LOAN ASSOCIATION and another, general guardians, Defendants: RASMUSSEN (Eric) and another, Respondents.*

*May 11—June 30, 1967.*

* Motion for rehearing denied, with costs, on September 11, 1967.

For the appellant there was a brief and oral argument by *Henry P. Hughes* of Oshkosh.

For the respondents there was a brief by *Williams, Williams & Meyer* of Oshkosh, and oral argument by *Eugene G. Williams*.

HALLOWS, J.   The trial court found in its findings of fact that during her lifetime Margaret L. Rasmussen

received from her husband his wages and used them to pay household expenses and from the surplus thereof, plus some added funds received from her mother Mae Thew, she made deposits in the savings accounts. The court also found Harold Rasmussen did not require periodic accounting from his wife and never inquired during her lifetime what she did with the money he turned over to her and he knew nothing of the establishment of the accounts until after the death of his wife. As a conclusion of the law the court stated the turning over of these earnings constituted a gift to the wife of any surplus. The question is whether the evidence supports the findings and the findings the conclusion.

Since the enactment of our married women's act, sec. 246.03, Stats., which recognized a married woman's right and capacity of ownership separate from that of her husband, a husband can make a gift of property to his wife. The present sec. 246.03, first appeared as R. S. 1858, ch. 95, sec. 3, which provided a married woman could receive property by gift, grant, devise or bequest from any person "other than her husband." This language was removed from the statute by ch. 86, Laws of 1895. See *Dockry v. Isaacson* (1925), 187 Wis. 649, 651, 652, 205 N. W. 391. But see *Cummings v. Friedman* (1886), 65 Wis. 183, 186, 26 N. W. 575, 56 Am. St. Rep. 628, which said a married woman may acquire title to property by gift from her husband but no reference was made to the statute.

Gifts from a husband to his wife are not presumed from the marital relationship but are governed by the same rules as gifts between strangers, namely, there must be an intention to part with the interest in and dominion over the property and there must be delivery of the property. *Estate of Budney* (1957), 2 Wis. (2d) 389, 86 N. W. (2d) 416; 26 Am. Jur., Husband and Wife, p. 864, sec. 256. The facts of the *Budney Case* are somewhat similar to the instant case. The husband cashed

his weekly check and gave the cash to his wife. Some of this she saved and hid in various places around the house. Although the husband knew his wife was saving money and was not denied access to it he was surprised, as perhaps many husbands would be, to discover upon his wife's death she had saved $7,200. Unable to find any evidence the husband intended to make a gift to his wife, the court held the money belonged to the husband and quoted 26 Am. Jur., Husband and Wife, p. 721, sec. 95, to the effect "Clear and uncontroverted evidence, and not a mere entrusting, is necessary to establish a gift from a husband to his wife."

This is an unduly harsh rule of proof which would ordinarily fall upon the wife, and we think that the evidence of a gift, to be sufficient, need not be uncontroverted so long as it is clear and convincing. This is the middle degree of proof. *Madison v. Geier* (1965), 27 Wis. (2d) 687, 135 N. W. (2d) 761.

It is apparently a common practice in some American households for the husband, for the sake of convenience or for other reasons satisfactory to him, to turn over most or all of his earnings to his wife to meet the household and other expenses. The image of a housewife scrimping and saving some of this money is a popular one, but how much scrimping can be done by the wife depends in part upon the amount of funds turned over to her. A husband and wife may have an understanding that she is to receive an "allowance" for certain purposes and intend that any surplus shall belong to the wife. This is a kind of reward or incentive bonus for good management. Then too the wife may, without any such definite understanding, be given funds for household purposes and the amount may or may not be sufficient; if not, she must ask for more. But if the allowance is sufficient or at times more than enough, one would think the surplus would still be impressed

with the household purposes and be added to the amount of the next allowance.

In other situations the wife may act as the "business manager," handling all the finances for the family. Such control of the funds does not ordinarily give rise to a gift of any surplus after meeting family expenses, otherwise very few husbands would entrust their wives with the household finances. The general rule in separate-property states in which the husband and wife may own property separately from the other is that the excess left after paying the joint expenses of the husband, the wife, and the family remains the property of the husband and does not automatically constitute a gift to the wife. See 41 C. J. S., Husband and Wife, p. 623, sec. 150, citing *Dolan v. Dolan* (1928), 107 Conn. 342, 140 Atl. 745; *Matter of Ekins* (1925), 126 Misc. 1, 213 N. Y. Supp. 162; and *Matter of Fliegelman* (1945), 184 Misc. 792, 55 N. Y. Supp. (2d) 139.

In both *Dolan* and *Ekins, supra,* the husband turned over substantially all of his earnings to his wife, who combined it with her own earnings and after paying expenses deposited the surplus in bank accounts in her own name. In both cases the husband knew of the account, but in neither case was there any understanding regarding what was to become of the money so saved. In both cases domestic difficulties developed and a dispute naturally arose over the savings. Both the Connecticut court in *Dolan* and the New York court in *Ekins* held the facts failed to indicate any intent on the part of the husband to make a gift of the surplus money to the wife. In these cases both parties contributed to a joint fund to meet their joint expenses and any surplus was owned jointly and was to be divided between them. Some people consider the marriage relationship creates a partnership, but under this theory the excess

of partnership funds could hardly belong, in the absence of an agreement, to the partner whose duty it is to handle the partnership funds.

Where only the husband contributes the funds the money earned by him is his property out of which he has a duty to support his family, and for this purpose he may make his wife the custodian of his earnings. But in the absence of clear evidence to the contrary the surplus after meeting such expenses remains his property. In *Matter of Fliegelman* (1945), 184 Misc. 792, 55 N. Y. Supp. (2d) 139, 141, the husband's earnings constituted the sole source of savings in dispute and the court said, "The moneys which make up the balance on deposit in the bank, constitute moneys which the widow was able to save solely out of the moneys advanced by the decedent for household expenses. Under the law, these savings by the wife continued to be the sole property of the husband." See also *Frick v. Cone* (1936), 160 Misc. 450, 290 N. Y. Supp. 592. Thus if a gift is to be found as the trial court did on the present facts, the evidence must be clear and convincing that the husband intended to make a gift of any excess to his wife.

There is no question that for the last twelve years of his married life Harold Rasmussen turned over his weekly check and his bonus checks to his wife. He was a salesman for a brewery and in addition to these checks he also received an expense account which he apparently kept for himself. He testified that in 1952 he suggested to his wife that she start saving for a home. He never inquired thereafter whether she was actually saving money. True, his testimony is somewhat inconsistent in that in one instance he testified he knew she was saving money and at another time he said he did not know. However, it is undisputed that he did not know his wife had established these two particular

bank accounts in her name as trustee for their children, or that she had purchased government bonds for the children. These bonds, however, are not involved in this action.

There is nothing in the record directly showing an agreement that the wife could keep as her own the surplus of money turned over to her after paying household expenses. It may be true the marital life of the parties was not mutually satisfactory and that they lived during most of their married life with the wife's mother in her mother's home, for which they paid no rent but they did pay household expenses and food. After the death of his wife, Harold Rasmussen cashed his checks, kept the money in his bedroom and it was available for his mother-in-law to use for household expenses. This arrangement continued until Harold Rasmussen remarried.

The trial court believed the failure of the husband to inquire concerning the money he turned over to his wife was evidence of a gift. While such evidence is not inconsistent with a gift, there is no rule that a husband must keep a constant check upon his wife and her handling of funds lest any surplus be considered hers by default. The evidence here fails to sustain the burden of proof of showing intent to make a gift.

There is much in the record indicating the wife wanted to provide an education for the two children, and intended that the savings accounts in dispute be used for that purpose. This is no doubt a laudible purpose. Eric Bion Rasmussen has had some college education, is over twenty-one years of age and married. But even if he was not of age and had college before him as does his brother Ky Tracy Rasmussen, these considerations are not evidence of any gift. Nor do we think because the wife might have spent all the money given to her, in which case there would now be no dispute, that she has a right to what she saved. A gift does not rest upon such grounds. There was a failure to show by clear and con-

vincing evidence that a gift to Mrs. Rasmussen was intended, and therefore she could not use the funds to establish the trusts. The judgment declaring the plaintiff Harold Rasmussen has no right, title or interest in the bank accounts must be reversed.

*By the Court.*—Judgment reversed and the cause remanded, with directions to enter a judgment adjudicating the plaintiff to be the owner of account number 6021 in the Oshkosh Savings & Loan Association in the name of Margaret L. Rasmussen, Trustee for Ky Tracy Rasmussen, and of account number 8145 in the Oshkosh Savings & Loan Association in the name of Margaret L. Rasmussen, Trustee for Eric Bion Rasmussen, and directing the defendant Oshkosh Savings & Loan Association to turn over to the plaintiff the present amount of said accounts.

CURRIE, C. J. (*dissenting*). The fact that the burden of proof required to establish a gift between husband and wife must be clear and convincing does not mean the trier of fact cannot predicate a finding of gift upon circumstantial evidence. In the instant case the husband must have realized that the amount of his weekly salary turned over to his wife was in excess of the living requirements of his household. This continued for a period of twelve to thirteen years. However, never once during this period did the husband inquire of his wife what she had done with the money he turned over to her. It is clear the trial judge did not believe the husband's testimony that at one time he suggested to his wife that she start saving for a home. On these facts the trial court had a right to draw the reasonable inference that a gift was intended of any excess money left over after the wife had paid the household living expenses. His finding of a gift being intended was, therefore, not against the great weight and clear preponderance of the evidence and should be affirmed.

The question of whether the wife made a valid transfer to the children is settled by sec. 231.205 (1), Stats. This statute specifically provides that any instrument declaring or creating a trust when otherwise valid shall not be held an invalid trust or an attempted testamentary disposition, because it contains any of the following powers, either exercisable by a settlor or another or both:

"(a) To revoke, alter, amend or modify any or all provisions of the trust. . . .
"(c) To add to or withdraw from the trust all or any part thereof at one time or at different times.
"(d) To direct during the lifetime of the settlor or another, the persons and organizations to whom or on behalf of whom the income shall be paid or principal distributed."

This statute clearly authorized the type of trust employed by the wife, which is commonly referred to as a "Totten" trust because the leading case establishing such validity is *Matter of Totten* (1904), 179 N. Y. 112, 71 N. E. 748. See also 1 Restatement (2d) Trusts, p. 155, sec. 58:

"Where a person makes a deposit in a savings account in a bank or other savings organization in his own name as trustee for another person intending to reserve a power to withdraw the whole or any part of the deposit at any time during his lifetime and to use as his own whatever he may withdraw, or otherwise to revoke the trust, the intended trust is enforceable by the beneficiary upon the death of the depositor as to any part remaining on deposit on his death if he has not revoked the trust."

I am authorized to state that Mr. Justice HEFFERNAN and Mr. Justice HANSEN join in this dissenting opinion.