ESTATE OF KOHN: KOHN, Appellant, v. KYNASTON,
Executrix, Respondent. ESTATE OF KOHN: KYNAS-
TON, Executrix, Appellant, v. KOHN, Respondent.

*Nos. 231, 314. Argued April 2, 1969.—Decided July 3, 1969.*
(Also reported in 168 N. W. 2d 812.)

For the appellant in Case No. 231 there was a brief by *James Buchbinder*, attorney, and *Edward D. Schneiderman* of counsel, both of Milwaukee, and oral argument by *Mr. Schneiderman*.

For the respondent in Case No. 231 there was a brief and oral argument by *Bernard F. Mathiowetz* of Milwaukee.

For the appellant in Case No. 314 there was a brief and oral argument by *Bernard F. Mathiowetz* of Milwaukee.

For the respondent in Case No. 314 there was a brief by *James Buchbinder*, attorney, and *Edward D. Schneiderman* of counsel, both of Milwaukee, and oral argument by *Mr. Schneiderman*.

HALLOWS, C. J.    Alice S. Kohn died testate on January 25, 1967, survived by her second husband Arthur L. Kohn and two daughters by a prior marriage, one of whom is Shirley Kynaston, the executrix of the estate. Upon the death of her first husband she had received a home and other assets. This home she sold and purchased another home, the title of which she took in her sole name. During her life, Mrs. Kohn was not gainfully employed. At the time of her death she had the home, $5,000 in United States savings bonds purchased in 1948, a small savings account and the property in dispute.

On July 1, 1950, two years after the death of her first husband, Mrs. Kohn married Mr. Kohn. At the time of the marriage Mr. Kohn worked for a railroad as a blacksmith and about six months later took a leave of absence and began traveling as a union official. He was away from home approximately 150 days a year. Mr. Kohn

gave his wife an allowance to operate the household which ranged from $300 a month in 1960 to $650 a month at the time of her death. About a month after their marriage, the Kohns opened joint savings account No. 2300 in the First National Bank in Wauwatosa. By January 23, 1967, two days before Mrs. Kohn's death, $10,008.95 had accumulated in this account and on that day Mr. Kohn withdrew $1,000 and on the following day $9,000 from the account.

After Mrs. Kohn's death, it was discovered she had opened a savings account in January of 1966 in the First National Bank in Wauwatosa, Wisconsin, identified as No. 3483, in her sole name. In June of 1965 she purchased the two $500 United States savings bonds. During the time for filing claims against the estate, Mr. Kohn applied for an extension of time, which was granted, and he then filed a claim against the estate alleging he was the true owner of the funds used to create account No. 3483 and to purchase the two United States savings bonds. The trial court held these assets belonged to Mr. Kohn and granted them to Mr. Kohn.

### Case No. 231—Joint Savings Account.

The trial court held when Mr. Kohn withdrew the $10,000 from the joint account, he severed the joint tenancy but did not destroy Mrs. Kohn's interest to one half of the withdrawal. This ruling followed from the *Estate of Schley* (1955), 271 Wis. 74, 72 N. W. 2d 767, and the *Estate of Gray* (1965), 27 Wis. 2d 204, 133 N. W. 2d 816, which were relied upon by the trial court as being applicable. An attempt was made by Mr. Kohn to show that this account was one for convenience and was not intended to be a true joint tenancy but the trial court thought the proof was not clear and convincing.

Joint tenancies between husband and wife have long been a source of problems in our jurisprudence, espe-

cially joint tenancies involving bank accounts. A joint tenancy in real estate does not raise the severance problems that the relationship in personal property creates because one does not have the power to convey all the real estate as he does to withdaw all the funds of a joint bank account. It is to be noted the present case involves a savings account and not a checking account, which by its very purpose makes the application of the joint tenancy concept difficult and, if applicable at all, requires a different application of the rule of severance.

Prior to the *Estate of Staver* (1935), 218 Wis. 114, 260 N. W. 655, rights of survivorship in bank deposits were determined by the law of gifts, but in *Staver* we adopted the contract theory; and in *Kelberger v. First Federal Savings & Loan Asso.* (1955), 270 Wis. 434, 71 N. W. 2d 257, we definitely established that the nature of a joint deposit depended primarily upon the intention of the depositor and this was a question of fact. Consequently, the intention of the depositor to create or not to create a joint tenancy in a bank account or the intention of the parties, generally husband and wife if they both participate in the creation of the account, is a controlling factor and the form of the bank account is not determinative of its nature. That form, together with surrounding facts and circumstances should be considered to determine the nature of the account at the time of its creation. *Estate of Roth* (1964), 25 Wis. 2d 528, 131 N. W. 2d 286. But a bank account may change its nature by agreement of the parties without changing its external bank form and proof of a modification of the original purpose or agreement is admissible to show a change of original purpose. Evidence subsequent to the establishment of the account may be relevant and probative of the intent at the time of the creation of the tenancy and of its nature. However, the form of the savings account is prima facie evidence of what it purports to be and the evidence to overcome it must be clear and

convincing. *Estate of Pfeifer* (1957), 1 Wis. 2d 609, 85 N. W. 2d 370; *Estate of Gray, supra.*

In the present case, Mr. Kohn attempted to show this joint savings account was one of convenience and not a true joint tenancy. But we find no evidence that the account was one in which he had the right to withdraw all the funds without the consent of his wife or without any accountability therefor. In a true joint tenancy, each tenant has an interest to a proportionate part but the power to deal with the whole, and there may be arrangements which only intend a right of survivorship and no present right. But that is not the fact here. The account existed for sixteen years during which time Mr. Kohn made no withdrawals until the two just before his wife's death. During these years Mrs. Kohn made eight withdrawals and for ten years from 1951 to 1961 there were no withdrawals although deposits were frequently made. This account was not used for Mr. Kohn's convenience while he was a union traveling representative. Besides, it was opened while he was a blacksmith and there is no evidence of any change of understanding or purpose of the account. If in his mind Mr. Kohn believed that he was the owner of all these funds, he should not have considered it advisable to withdraw the funds and deposit them in his own name shortly before the death of his wife. We think the trial court was correct in finding there was not clear and convincing evidence which overcame the presumption arising from the form of the savings account.

We have some difficulty with the severance rule applied to savings accounts. The trial court held the withdrawal of substantially all the account by Mr. Kohn to be a severance. In the absence of proof that the money was not to be used for the exclusive benefit of the drawee and to the exclusion of the other joint tenant and for a purpose not contemplated by the establishment of the account, one can only conclude, as the trial court

did, that the withdrawal and the placing of the funds in his own name constituted an appropriation of the interest of the other joint tenant such as would constitute a severance. Under the rule of the *Estate of Schley* and the *Estate of Gray, supra,* Mr. Kohn had the power to withdraw the funds but not the power or right to appropriate more than his proportionate share. In doing so he destroyed Mrs. Kohn's interest in the joint tenancy and thereby he lost the right to become the owner of that one half by survivorship. This may seem to be, as Mr. Kohn claims, an unusual result because if he had waited and not withdrawn the funds, he would have become the owner of the entire account by survivorship upon the death of his wife. But it must be recognized he did not wait and the law would have helped if he had not self-helped. The judgment on this appeal must be affirmed.

### Case No. 341—Appeal of the Estate.

Upon the application of Mr. Kohn within the sixty days in which to file claims, the trial court extended the time to file his claim. The basis of the extension was Kohn's statement he was unable to fully and particularly state his claim because he was unaware he had a claim. This is based on the fact he had no knowledge his wife had opened a separate bank account and had purchased two government savings bonds with money he gave her for household expenses. The question now presented is whether this reason is sufficient to support the order extending the time for filing claims.

It is conceded the court has a broad discretion under sec. 313.03 (1), Stats., which only requires for such purpose "a showing satisfactory to the court." This section does not require good cause in order to secure an extension of time. *Estate of Benesch* (1932), 206 Wis. 582, 240 N. W. 127. It is argued Kohn knew the facts and could have secured legal counsel within the original time limit. This may be so if Kohn had realized that the facts

gave rise to a claim. But this is no common case of neglecting to file and the trial court did not abuse its discretion.

The trial court found the funds used by Mrs. Kohn to create her sole account in the First National Bank in Wauwatosa and to purchase two United States savings bonds came from the household allowance Mr. Kohn gave her. We think this finding is sustained by the evidence. The account was opened in January, 1966, and the amount of $1,496.36 was accumulated during that year. While deposits were made almost monthly in this account, no deposit during this time was made in the joint account No. 2300. Also, during this time deposits were made by Mrs. Kohn in another account in her name in the First Wisconsin National Bank of Milwaukee, but no claim is made to this account. Deposits in this account were also made during the year 1965 while no withdrawals were made between January and November of that year. Thus this account was not the source of the purchase of the savings bonds. The trial court considered the excess of the household money was not intended to be a gift to Mrs. Kohn and correctly applied the rule of *Rasmussen v. Oshkosh Savings & Loan Asso.* (1967), 35 Wis. 2d 605, 151 N. W. 2d 730, and *Estate of Budney* (1957), 2 Wis. 2d 389, 86 N. W. 2d 416. In *Rasmussen*, we held that when a husband turns over money to his wife to pay household and other family expenses in the absence of clear evidence to the contrary the surplus after meeting such expenses remains his property.

It is argued by the estate that these cases are distinguishable because in both of them the earnings of the husband were the sole source of the deposited funds. We do not think this difference is controlling. The question is not one of law but of fact and in the instant case, there is no showing that Mrs. Kohn used any of her own money to establish the account or to purchase the bonds. The estate's argument in this respect is based upon speculation.

The estate also relies on *Norman v. Kernan* (1937), 226 Wis. 78, 276 N. W. 127, as being contrary to *Rasmussen.* The issue in *Rasmussen* was not considered in *Norman,* which involved a question whether a resulting trust was created in favor of the person who supplied the funds and who knew the funds were being used to buy real estate in the name of a third person who was a natural object of his bounty. Knowledge of the transaction on the part of the husband and the supplier of the funds plus acquiescence is the basis for the result in *Norman,* while in the instant case, Mr. Kohn was unaware his wife bought the bonds or established the savings account in her sole name.

*By the Court.*—Judgments affirmed.