**FIRST WISCONSIN TRUST COMPANY, as Personal Representative of the Estate of Patricia A. Jansen, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 79–C–973.

United States District Court, E.D. Wisconsin.

Aug. 20, 1982.

Timothy C. Frautschi, Foley & Lardner, Milwaukee, Wis., for plaintiff.

Joseph P. Stadtmueller, U.S. Atty., Milwaukee, Wis., and Jeffrey D. Snow, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action brought pursuant to 26 U.S.C. § 7422(a) and (f)(1) for the recovery of $591,888.25 in gift and estate taxes, plus interest, paid by the plaintiff First Wisconsin Trust Company as personal representative of the Estate of Patricia A. Jansen. The court has jurisdiction under 28 U.S.C. §§ 1340 and 1346(a)(1). Currently pending before the court are the plaintiff's motion for summary judgment and the defendant's motion for partial summary judgment. For the following reasons, the plaintiff's motion will be granted and the defendant's motion will be denied.

On April 5, 1963, Patricia Jansen and her husband John opened an account with Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"). The account was denominated a joint tenancy with the right of survivorship. Patricia endorsed and assigned to the account 6,648 shares of stock in Phillip Morris, Inc., which she had received from her mother and which were solely owned by her up to that time, and gave them to John to deposit in the account. The stock was then put into street account form, i.e., it was registered in the name of a nominee of the brokerage firm, and a New York stock transfer tax was paid on the title change. Dividends thereafter were issued payable to John and Patricia jointly, they were reported on John and Patricia's joint federal income tax return, and each reported one-half of the dividend income on the Wisconsin state returns. It is stipulated that Mr. Leo Farney, the Administrative Manager and Assistant Vice-President of Merrill Lynch, would testify that after the account was opened, Merrill Lynch considered the assets as being owned by John and Patricia as joint tenants with the right of survivorship, and that Merrill Lynch would make distributions of securities and cash from the account only in the names of John and Patricia unless express directions were received from both to assign securities or cash differently.

On the same day the account was opened, Patricia was hospitalized for mental illness. She was diagnosed as schizophrenic with a history of delusions of persecution. Once hospitalized, her condition improved rapidly, her depression and delusions vanished, and she achieved good insight into her illness. She was discharged on May 17, 1963, in a markedly improved condition.

On July 31, 1963, Patricia and John signed a form designated "Joint Account with Right of Survivorship Cash Transactions" which was addressed to Merrill Lynch and provided:

"Dear Sirs:

"With respect to our joint account with right of survivorship we confirm that:

"1. In all matters pertaining to the account you may act upon orders and instructions from either of us.

"2. Upon the death of either of us, all securities, funds and property in the account shall be the sole property of the survivor.

\* \* \* "

In 1966 the Phillip Morris stock split three for one. In 1969 John and Patricia removed 2,500 shares from the account in their joint names, the stock split two for one, and they removed an additional 2,000 shares in their joint names, leaving 32,888 shares in the account. In December 1972, the account was terminated and 16,444 shares were issued to Patricia individually and deposited in a revocable trust created by her for her own benefit. The other 16,444 shares were issued to John individually. At that time Patricia filed a United States Gift Tax Return for 1963, paying $15,254.84 in gift tax on the 6,648 shares of Phillip Morris stock which had originally been deposited in the Merrill Lynch account. Patricia died on June 4, 1973. In the course of auditing her estate, the United States decided that no completed gift of stock was made by Patricia to John in 1963, but rather that two gifts were made in 1969 when certificates were issued in their joint names, and a third gift in 1972 when the 16,444 shares of stock were issued to John

individually. Therefore, the United States determined, a gift tax deficiency was due on the value of the stock at the time of the completed transfers. Additionally, the United States determined that the 1972 transfer was a gift in contemplation of death and, therefore, that the value of the 16,444 shares should be included in Patricia's estate for estate tax purposes.

The parties agree that if the Court determines that a completed gift from Patricia to John was made in 1963, then the plaintiff is entitled to all of the relief which it seeks in claims one and two and the third claim will be moot. They also agree that if the Court determines that the gift was not completed until the stock certificates were reissued, i.e., in 1969 and then in 1972, that a trial is required on the issue of whether the 16,444 shares issued to John in 1972 were issued in contemplation of death. The Court is satisfied that the gift was completed in 1963 and that the plaintiff, consequently, is entitled to summary judgment.

Section 2501(a) of Title 26 U.S.C. provides that a federal tax shall be paid on the transfer of property by gift. The federal regulations regarding the gift tax provide in part:

"(g)(1) Donative intent on the part of the transferor is not an essential element in the application of the gift tax to the transfer. The application of the tax is based on the objective facts of the transfer and the circumstances under which it is made, rather than on the subjective motives of the donor. \* \* \*

\* \* \* \* \* \*

"(h) The following are examples of transactions resulting in taxable gifts \* \* \* :

\* \* \* \* \* \*

"(4) If A creates a joint bank account for himself and B (*or a similar type of ownership by which A can regain the entire fund without B's consent*), there is a gift to B when B draws upon the account for his own benefit, to the extent of the amount drawn without any obligation to account for a part of the proceeds to A. \* \* \*

"(5) If A with his own funds purchases property and has the title conveyed to himself and B as joint owners, with rights of survivorship (other than a joint ownership described in example (4) but which rights may be defeated by either party severing his interest, there is a gift to B in the amount of half· the value of the property. * * *" 26 C.F.R. § 25.2511–1. (Emphasis added.)

In 1969 a Revenue Ruling was issued construing 26 C.F.R. § 25.2511–1. It states in part:

"A and B entered into a standard form of agreement with a stock brokerage firm that created a joint account with right of survivorship, and provided that either A or B might deal with the firm on behalf of the account as though he were the sole owner. Upon the direction of either A or B, the firm would sell the securities held in the account and turn over the proceeds to either joint owner in his individual capacity. A, using his separate property, and without consideration, provided all of the funds for the purchases made on behalf of the account, and the securities held therein were issued in the name of a nominee of the firm (street form).

"For purposes of the Federal gift tax, the creation by A of a joint bank account for himself and B, or a similar type of ownership *by which A can regain the entire fund without B's consent,* does not constitute a completed transfer from A to B until the latter draws upon the account for his own benefit without any obligation to account for a part of the proceeds to A. * * * Where the securities held in a joint brokerage account are registered in the name of a nominee of the firm rather than in the names of the owners of the account, the property more closely resembles a general cash fund than specific jointly owned securities. In such a case, the sole *contributor to the joint brokerage account has not parted with dominion and control over the fund to any greater degree than in the case of a joint bank account.*

"Accordingly, where A, with his separate funds, creates a joint brokerage account for himself and B, and the securities· purchased on behalf of the account are registered in the name of a nominee of the firm, A has not made a gift to B, for Federal gift tax purposes, unless and until B draws upon the account for his own benefit without any obligation to account to A. If B makes a withdrawal under such circumstances, the value of the gift by A would be the sum of money or the value of the property actually withdrawn from the account by B." Revenue Ruling 69–148 1969–1, Cum.Bull. 2226. (Emphasis added.)

 The essence of a transfer for gift tax purposes is the passage of dominion and control over the economic benefits of property rather than any technical changes in its title. *Estate of Sanford v. Commissioner,* 308 U.S. 39, 43, 60 S.Ct. 51, 55, 84 L.Ed. 20 (1939). In determining whether dominion and control of property have passed from the donor in sufficient degree to constitute a completed gift of the property, the courts have looked to state law to determine the degree of control which the donor has retained. In *Haneke v. United States,* 548 F.2d 1138 (4th Cir.1977), for example, the Fourth Circuit held that no gift was completed for federal gift tax purposes when a husband set up joint savings accounts with rights of survivorship with his wife, and he provided all of the funds for the accounts, because under Maryland law, *Kornmann v. Safe Deposit & Trust Co. of Baltimore,* 23 A.2d 692, 180 Md. 270 (1942), he retained the right to withdraw all of the money put into the accounts without obligation to account to his wife for it, and thus he had not given up dominion and control over the money. In *Harley A. Wilson v. Commissioner,* 56 T.C. 579 (1971), the Tax Court looked to Idaho law to determine the control retained by a father who set up joint savings accounts with his children and contributed all of the funds for the accounts, concluded that under Idaho law he could withdraw all of the funds without obligation to account to his children for them, and held that consequently no completed gift had been made.

In Wisconsin, too, the joint form of an account is not determinative of whether or not a true joint tenancy exists, and a transfer of property is not a gift if the transferor retains dominion and control over the property. *Department of Taxation v. Berry,* 258 Wis. 544, 46 N.W.2d 757 (1951). If, for example, the donor sets up a joint account with a right of survivorship, intending the donee to benefit at the donor's death but also intending to retain full authority to withdraw the funds, collect any dividends or interest, and change the donee at any time, no gift has been made. *Zander v. Holly,* 1 Wis.2d 300, 84 N.W.2d 87 (1957). On the other hand, if the donor does intend to create a true joint tenancy from the inception, then even in a situation where either joint tenant has the power to withdraw all of the jointly held funds, the donor cannot do so without obligation, but instead must account to the joint tenant for one-half of the funds withdrawn. *Estate of Schley,* 271 Wis. 74, 72 N.W.2d 767 (1955).

The determinative factor under Wisconsin law as to whether or not a true joint tenancy is created and an irrevocable gift made is, therefore, the intent of the donor rather than the form of ownership created by the donor. *Zander v. Holly,* supra, at 307–308, 84 N.W.2d 87. If the form of ownership created is a joint tenancy with the right of survivorship, however, then presumptively there was a donative intent. *Id.,* at 310, 84 N.W.2d 87; *Estate of Michaels,* 26 Wis.2d 382, 390–391, 132 N.W.2d 557 (1965). That presumption can be rebutted only by clear and convincing evidence that the donor intended to retain sole control over the transferred property. *Estate of Michaels,* supra; *Estate of Gray,* 27 Wis.2d 204, 209, 133 N.W.2d 816 (1965); *Estate of Kohn,* 43 Wis.2d 520, 168 N.W.2d 812 (1969).

In this case Patricia Jansen signed a document indicating her intent that the account established with her husband John be a joint tenancy with the right of survivorship. Presumptively, therefore, when she deposited her Phillip Morris stock in the account, she lost the right to dispose of that stock without incurring an obligation to account to John for one-half of its value. The brokerage firm's treatment of the Jansens thereafter as joint owners is relevant evidence under Wisconsin law of Patricia's donative intent. *In re Estate of Weger,* 71 Wis.2d 484, 241 N.W.2d 157 (1976). Once the account was created dividends were issued jointly payable to Patricia and John and were treated on their tax returns as jointly owned property. When shares were removed from the account, the certificates were issued jointly or a 50–50 division of certificates was made. Such evidence of a subsequent course of conduct in relation to an account is also relevant under Wisconsin law on the issue of intent at the time of creation of the account. *In re Estate of Weger,* supra; *Estate of Kohn,* 43 Wis.2d 520, 168 N.W.2d 812 (1969).

As tending to show that Patricia did not intend to relinquish control, the Government points to her failure to file a federal gift tax return on the 1963 transfer until 1972 and the transfer of her stock certificates to street account form rather than into jointly held certificates in 1963. Those two facts, when weighed against all of the other evidence which has been agreed to, do not constitute clear and convincing evidence that Patricia did not intend to make a gift and to relinquish present and sole control in 1963.

The United States also points to Patricia's hospitalization for mental illness on the day the joint account was created as tending to negate intent. The doctor's report which the United States has submitted does not establish that she was mentally incompetent; it establishes only that she was hospitalized for six weeks for treatment of a mental illness, that her condition improved significantly during her hospitalization, and that she was released in mid-May 1963 with a satisfactory mental condition. At the end of July 1963, she signed the confirmation of the establishment of the joint account.

The United States also contends that for tax purposes, as opposed to questions of inheritance, the law in Wisconsin is that the

creator of a joint account which, due to its form, allows either party individually to withdraw funds from the account has not relinquished power over the account and therefore has not made a completed gift. That is the holding of *Department of Taxation v. Berry,* supra; however, the Court in *Berry* did not consider the quality of the control retained by the donor or whether it had an impact on the question of a completed gift. The point was not raised. Since *Berry* was decided the Wisconsin Supreme Court has evolved its theory of presumptive intent and established the standard for rebuttal and has noted that *Berry's* holding may no longer be valid in light of the evolving case law on donations and creation of joint tenancies. *Estate of Simonson,* 11 Wis.2d 84, 90, 104 N.W.2d 134 (1960). In light of the holdings of all of the Wisconsin cases which have specifically considered the relationship between donative intent and control since *Berry* was decided, and in light of the *Berry* court's failure even to consider the problem, I am satisfied that *Berry* has been modified de facto by subsequent Wisconsin case law and cannot be relied upon.

■■■■ Finally, the United States contends that Patricia Jansen retained the mechanical ability to withdraw stock from the joint account,* and that even if doing so would have imposed on her a legal duty to account to John for one-half of the value of the stock withdrawn, her retention of that ability constituted control sufficient to prevent there being a completed gift. It points to the example described in the Revenue Ruling which is quoted above. The argument ignores the realities of dominion and control.

As previously stated, "the essence of a transfer [by gift] is the passage of control over the economic benefits of property rather than any technical changes in its title." Therefore, "a retention of control over the disposition of the * * * property, whether for the benefit of the donor or others, renders the gift incomplete until the power is relinquished whether in life or at death." *Estate of Sanford v. Commissioner,* 308 U.S. 39, 43, 60 S.Ct. 51, 55, 84 L.Ed. 20 (1939). The governing regulation which is quoted above, 26 C.F.R. § 25.2511–1(h), distinguishes between ownership wherein the donor can regain the entire fund without the donee's consent, and ownership wherein title is conveyed to the donee jointly and the donor can no longer gain the full value of the property for his own benefit. The situation in this case is in between. John Jansen did not have joint title on the stock certificates themselves as of 1963, but as of that time he had a legal right enforceable against Patricia to one-half of the value of the stock. That she had given him such legal right means, in my opinion, that she had effectively given up control over that one-half of her stock to which he became entitled when she assigned the stock to their joint account.

The United States in its rebuttal memorandum filed March 29, 1982, makes the argument at one point that it would be sufficient to sustain its position if Patricia had the power to get the stock certificates back into her name, even if she lacked the legal right to do so, i.e., if she could perform the mechanical act of withdrawal. (Memorandum at 3–4.) Elsewhere the Government states that "Patricia could always have regained possession of the property in

---

* Even though the confirmation which Patricia signed stated that "[i]n all matters pertaining to the account you may act upon orders and instructions from either of us," Merrill Lynch's position is that it would not have issued stock individually except in response to a joint request. The plaintiff argues that, therefore, Patricia did not retain the power to withdraw stock at her option. The Government contends that the quoted language is unambiguous and that Merrill Lynch's interpretation is irrelevant since as a matter of law the language would

have permitted Patricia to deal individually with the stock. I find the language less clear than the Government maintains and would allow evidence of industry custom to learn if Patricia could have acted on her own to regain control of the stock. Even assuming she could have done so, however, the power to get the stock certificates back into her hands and name does not, in my opinion, equate with dominion and control since she would have been legally obligated to account to her husband for one-half of its value.

the account *for her individual needs and purposes.* This is enough to make the gift incomplete for Federal gift tax purposes *as Patricia never had a duty to account to John,* who contributed nothing to the Merrill Lynch account in which the Phillip Morris stock was held." (Memorandum at 2–3.) (Emphasis added.) The Government's premise fails because under Wisconsin law Patricia would have had a duty to account. Therefore, having legally relinquished control, she should be found to have made a completed gift.

The Revenue Ruling upon which the Government relies would seem to require the opposite result since the example given is almost identical to the facts of this case. Once again, though, it covers this case only if the Government's assumption is correct that the technical ability to regain control, even without legal entitlement, is sufficient to preclude a completed gift. All that the Revenue Ruling really states is that the donor in its example "can regain the entire fund without the [donee's] consent" and, therefore, "the sole contributor to the brokerage account has not parted with dominion and control over the fund to any greater degree than in the case of a joint bank account." To repeat, where as a matter of state law the donor cannot regain the funds without legal obligation to account, she cannot realistically be said to possess the ability to regain the funds without the donee's consent and she cannot be said to have effective dominion and control over them.

■ To the extent the Revenue Ruling is intended by the Commissioner to be given a literal construction which would treat the mechanical ability to withdraw as equivalent to the retention of dominion and control, the Court is not bound to and does not accept that construction of the federal gift tax statute or of the administrative regulation since it does not accord with the purpose of the taxing statute as described by the Supreme Court. See *Estate of Sanford v. Commissioner,* supra, at 52, 60 S.Ct. at 59.

For the foregoing reasons,

IT IS ORDERED that the plaintiff's motion for summary judgment is granted, that the defendant's motion for partial summary judgment is denied, and that judgment be entered in favor of the plaintiff First Wisconsin Trust Company, as personal representative of the Estate of Patricia A. Jansen, against the United States of America (1) on the plaintiff's first claim, in the sums of $228,944.34 plus interest from January 25, 1979, and $90,426.73 plus interest from February 27, 1979; and (2) on the plaintiff's second claim, in the sum of $362,943.91 plus interest from May 26, 1977, with costs to the plaintiff as allowed by law.