ESTATE OF KEMMERER: FIRST NATIONAL BANK OF JANES-
VILLE, Executor, Appellant, v. ECKE, Respondent.

*April 4—May 1, 1962.*

481

For the appellant there was a brief by *Geffs, Geffs, Block & Geffs* of Janesville, and oral argument by *Jacob Geffs*.

For the respondent there was a brief by *Hansen, Eggers, Berres & Kelley* of Beloit, and oral argument by *Gerald J. Berres*.

HALLOWS, J. On the trial the claimant introduced testimony of Bessie Sands, a domestic employee of the decedent, that she overheard a conversation between the deceased and Goldie Ecke to the effect the deceased wanted Goldie to have the money in the account if anything happened to her. Violet Missner testified she overheard a conversation between the deceased and her sister Goldie Ecke in which the deceased told Goldie she did not want the boys or their wives to have the bankbook because they would get every-

thing else and she wanted Goldie to have the money. Goldie Ecke testified without objection concerning the opening of the joint account by the deceased with her, the giving of the passbook to her by the deceased, and that the deceased had never asked for its return. The court refused to allow cross-examination by the executor relating to demands made by the deceased upon Mrs. Ecke for the passbook, refused to admit direct testimony of Arthur and Kenneth Kemmerer relating to the alleged demands made by their mother upon the claimant in their presence for the return of the passbook, and refused to allow Arthur Kemmerer to testify as to certain conversations with the deceased concerning the reason for establishing the joint account, on the ground the witnesses were incompetent to testify under sec. 325.16, Stats. [1] An offer of proof by the estate was made.

There is no question that Bessie Sands and Violet Missner were competent witnesses to testify to the conversations they overheard between the deceased and Mrs. Ecke. They were not interested parties and the conversations were not had by the witnesses personally with the deceased. *Stuart v. Crowley* (1928), 195 Wis. 47, 217 N. W. 719; *Wollman*

---

[1] "325.16 TRANSACTIONS WITH DECEASED OR INSANE PERSONS. No party or person in his own behalf or interest, and no person from, through, or under whom a party derives his interest or title, shall be examined as a witness in respect to any transaction or communication by him personally with a deceased or insane person in any civil action or proceeding, in which the opposite party derives his title or sustains his liability to the cause of action from, through, or under such deceased or insane person, or in any action or proceeding in which such insane person is a party prosecuting or defending by guardian, unless such opposite party shall first, in his own behalf, introduce testimony of himself or some other person concerning such transaction or communication, and then only in respect to such transaction or communication of which testimony is so given or in respect to matters to which such testimony relates. And no stockholder, officer, or trustee of a corporation in its behalf or interest, and no stockholder, officer, or trustee of a corporation from, through, or under whom a party derives his or its interest or title, shall be so examined, except as aforesaid."

*v. Ruehle* (1899), 104 Wis. 603, 80 N. W. 919. Such testimony did not waive the statute. However, Mrs. Ecke was incompetent to testify concerning the transaction with her deceased sister in establishing the account and the failure of the deceased to demand the passbook. This testimony was given without objection on the part of the executor and in support of Mrs. Ecke's claim the deceased made a gift to her of the joint account. It was error for the court not to allow the executor of the estate to cross-examine Mrs. Ecke concerning her direct testimony dealing with the establishment of the account and also concerning the two occasions on which Mrs. Kemmerer is alleged to have had conversations with the claimant relating to the return of the passbook and the changing of the account. Having been allowed to testify to the transaction with the deceased, the claimant cannot now argue she is immune from cross-examination as to that matter.

We appreciate the "dead man's statute" has been subject to various confusing interpretations and through the years has been severely criticized. The origin of the statute, its construction, and the problem of waiver have been the subject of many excellent law-review articles. See Currie, Transactions With Deceased Persons, 1948 Wisconsin Law Review, 491; 43 Marquette Law Review, 73; 1940 Wisconsin Law Review, 407.

In *Estate of Flierl* (1937), 225 Wis. 493, 274 N. W. 422, the estate called as its witness a scrivener concerning the promissory notes involved in a transaction between the deceased and the claimant, and it was held the estate removed the incompetency of the claimant to testify to the whole transaction. Likewise in the *Estate of Gilbert* (1918), 167 Wis. 291, 166 N. W. 442, 167 N. W. 447, where the estate of the deceased put on as a witness an appraiser who testified to a transaction between the deceased and the claimant, it was held the door was open to put in testimony by the same witness to the entire transaction. In the case at

bar, by not objecting to the incompetency of the witness for the opposite party, the estate did not foreclose itself from relying upon the opening of the door by the opposite party claimant. In such a situation, the party using the incompetent witness without objection does so at the peril of waiving the incompetency of witnesses for the other party and allowing in testimony concerning the transaction or conversation with the deceased.

The dead man's statute, which has existed in this state since 1858, is the last vestige of the common-law rule of the incompetency of an interested witness. This is but a minor reason, however, for the dead man's statute. The reason for the statute is the belief it is better public policy to protect the estate from possible fraudulent claims than to allow testimony of the living which cannot be counteracted or refuted by the testimony of the deceased. The purpose of the statute is not to foreclose the estate of the deceased from putting in testimony on an issue when testimony is otherwise available. There is no doubt that in many cases the statute prevents what might otherwise be a just result, as was pointed out in the *Estate of Hounsell* (1948), 252 Wis. 138, 31 N. W. (2d) 203.

Arthur and Kenneth Kemmerer were not disqualified from testifying to the demands made by the deceased on Mrs. Ecke for the return of the bankbook and to changing the account. While both these witnesses could be considered as being interested under sec. 325.16, Stats., the transactions and communications testified to by them were not personally with the deceased but conversations the deceased had in their presence with Mrs. Ecke. At least two requisites are necessary to disqualify a witness under sec. 325.16: (1) That the witness has a certain type of interest, and (2) that the testimony relates to a transaction or communication had by the witness personally with the deceased. Either one alone is not sufficient to disqualify the witness.

The second question is the effect of the power of attorney given by the deceased to Kenneth Kemmerer. The power of attorney appointed Kenneth S. Kemmerer the lawful attorney for the deceased for her and in her name to have the control and management of her farm, to pay all obligations properly chargeable to her, and to have the control and management of her business and affairs of the farm or otherwise, to deposit money in her name, pay obligations by check in her name, and generally "to have the management of all of my financial and business affairs" and to do such acts as fully as the deceased might or could do if personally present. The language of this power of attorney is sufficiently broad to authorize the withdrawal of the funds from the joint account if the deceased had such right at that time.

Because this case must go back for further hearing, we cannot pass upon the question of the nature of the transaction of the respective rights of the parties to the joint account. All the facts are not before us. We point out, however, there is no formalistic rule by which all the jural relationships of the parties to a joint savings account can be determined. The underlying principle is to determine the intent of the depositor in establishing the account. See *Kelberger v. First Federal Savings & Loan Asso.* (1955), 270 Wis. 434, 71 N. W. (2d) 257. After being committed to the gift theory in *Dupont v. Jonet* (1917), 165 Wis. 554, 162 N. W. 664, and *Marshall & Ilsley Bank v. Voigt* (1934), 214 Wis. 27, 252 N. W. 355, the court adopted the contract theory to explain the legal relationships in joint-account situations. *Estate of Staver* (1935), 218 Wis. 114, 260 N. W. 655; *Estate of Skilling* (1935), 218 Wis. 574, 260 N. W. 660.

The mere form of the joint bank account is not determinative but must be considered with the other facts and circumstances in order to determine what was intended to

be created. A true joint tenancy may be created in which neither party has a right to withdraw all the funds and the incident of survivorship exists. *Estate of Schley* (1955), 271 Wis. 74, 72 N. W. (2d) 767, involved a husband and wife and the opinion relies on sec. 230.45 (2), Stats., and may not extend to parties not husband and wife. *Schley* also pointed out that sec. 221.45, providing that when deposits were jointly made in a bank, such deposit or any part thereof, may be paid to one or both, was for the protection of the bank and did not determine the rights of the parties as between themselves. In this respect, *Schley* modifies *Department of Taxation v. Berry* (1951), 258 Wis. 544, 46 N. W. (2d) 757.

A joint account may give rise to an agency for what is sometimes called the joint account for the convenience of the depositor. In such a case, the nondepositor has the power to withdraw for the benefit of the depositing owner but no rights of survivorship are intended. *Plainse v. Engle* (1952), 262 Wis. 506, 56 N. W. (2d) 89, 57 N. W. (2d) 586; *Schwanke v. Garlt* (1935), 219 Wis. 367, 263 N. W. 176.

In *Zander v. Holly* (1957), 1 Wis. (2d) 300, 84 N. W. (2d) 87, a joint account was created which was construed to reserve to the depositor, an aunt, the complete right of withdrawal of the funds in the joint account created with her niece, but that the niece should have whatever remained in the account by survivorship. These cases are cited merely to show the intentions of the parties must be ascertained to determine what rights the so-called joint tenants of a bank account have between themselves during their lifetime and upon the death of one of them. As a working rule, it was stated in the *Estate of Pfeifer* (1957), 1 Wis. (2d) 609, 85 N. W. (2d) 370, that a joint account raised a rebuttable presumption that the creator intended the usual rights incident to jointly owned property including sur-

vivorship, and evidence to the contrary must be clear and satisfactory.

In determining the rights as between so-called co-owners either during their lifetimes or after the death of one of them, we do not consider the two cases of *Department of Taxation v. Berry, supra,* and *Estate of Simonson* (1960), 11 Wis. (2d) 84, 104 N. W. (2d) 134, as controlling. These cases depend upon taxing statutes to determine the question of taxation. For a discussion of this difficult problem, see Cotter, Observations on the Law of Joint Tenancy In Wisconsin, 40 Marquette Law Review (1956), 92; Estate Planning: Co-Ownership, 1958 Wisconsin Law Review, 507; 37 Marquette Law Review (1954), 306; 1961 Wisconsin Law Review, 150.

*By the Court.*—Judgment reversed, and a new trial granted.