**2023 WI App 60**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:        2022AP2036

Complete Title of Case:

IN RE THE ESTATE OF CLARENCE E. KLAWITTER:

CARLA HENKE,

      APPELLANT,

    V.

THE ESTATE OF CLARENCE E. KLAWITTER,

      RESPONDENT.

| | |
|---|---|
| Opinion Filed: | October 12, 2023 |
| Submitted on Briefs: | June 7, 2023 |

| | |
|---|---|
| JUDGES: | Kloppenburg, P.J., Blanchard, and Graham, JJ. |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the appellant, the cause was submitted on the briefs of *Andrew J. Adams* and *Benoit M. Letendre* of *West & Dunn LLC*, Baraboo. |
| Respondent ATTORNEYS: | On behalf of the respondent, the cause was submitted on the brief of *John R. Miller* of *Miller & Miller, LLC*, Portage. |

COURT OF APPEALS
DECISION
DATED AND FILED

October 12, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP2036**

STATE OF WISCONSIN

Cir. Ct. No. 2022IN1

IN COURT OF APPEALS

IN RE THE ESTATE OF CLARENCE E. KLAWITTER:

CARLA HENKE,

   APPELLANT,

V.

THE ESTATE OF CLARENCE E. KLAWITTER,

   RESPONDENT.

APPEAL from an order of the circuit court for Marquette County: CHAD A. HENDEE, Judge. *Affirmed*.

Before Kloppenburg, P.J., Blanchard, and Graham, JJ.

¶1 GRAHAM, J. Carla Henke appeals a circuit court order that was entered following an evidentiary hearing in the probate court. In its order, the court granted declaratory judgment to the Estate of Clarence E. Klawitter, determining

that the Estate is the sole owner of funds in two accounts that had been jointly held by Carla and her father, Clarence Klawitter.[1] In granting judgment to the Estate, the court acknowledged the presumption raised by WIS. STAT. § 705.04(1) (2021-22)[2] that "[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party," and the court determined that the Estate rebutted that presumption by presenting "clear and convincing evidence" that Clarence had "a different intention at the time the account[s] [were] created." *See* § 705.04(1).

¶2 On appeal, Carla argues that the circuit court erroneously admitted and relied on inadmissible evidence, and that the admissible evidence was insufficient to rebut the presumption raised by WIS. STAT. § 705.04(1). We disagree and affirm the circuit court's order.

## BACKGROUND

¶3 Clarence died intestate in December 2021. He was survived by his four daughters, Carla, Jennifer Shier, Sara Wilson, and Brenda Klawitter, and by his sister-in-law, Joan McReath. The survivors consented to informal administration of the estate, and Joan was appointed as its personal representative.

¶4 During probate, the Estate contested Carla's ownership of funds in two joint accounts that were held in Clarence's and Carla's names and totaled approximately $82,000. The Estate sought a declaration that it is the sole owner of these funds. The Estate's position was that, although Clarence added Carla's name to the accounts as a joint owner in 2011, he had not done so with the intention of

---

[1] We will refer to Carla, Clarence, and other members of their family by their first names to avoid confusion because many of them share last names.

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

2

creating joint accounts with joint ownership or survivorship rights. According to the Estate, the intention had been to create accounts of convenience, Clarence added Carla to the accounts so that she could withdraw funds at his direction and for his benefit, and he did not intend Carla to be the sole beneficiary of the accounts upon his death.

¶5 The dispute proceeded to a hearing. During that hearing, the parties appeared to agree that, based on the signature cards that Clarence and Carla had signed in 2011 to add Carla's name to the accounts, they had presumptively created joint accounts with survivorship rights. The parties also agreed that the sums remaining in the accounts after Clarence's death presumptively belonged to Carla pursuant to WIS. STAT. § 705.04(1), and that the Estate had the burden to overcome that presumption by presenting clear and convincing evidence that the intention was not to create joint accounts with survivorship rights in 2011, when Carla was added to the accounts.

¶6 However, the parties did not agree on the evidence that the Estate could introduce to satisfy its burden of proof. At the outset of the hearing, Carla argued that the Estate could not overcome the presumption in WIS. STAT. § 705.04(1) unless it presented evidence of Clarence's intention that was contemporaneous to the creation of the joint accounts in 2011. She argued that the Estate could not rely on evidence of Clarence's subsequent statements and conduct because such evidence was irrelevant or legally insufficient to prove Clarence's intention at the time the accounts were created. Relatedly, Carla argued that any after-the-fact statements Clarence made concerning his intention for the accounts were not admissible under the hearsay exception for statements of the declarant's "then existing state of mind." *See* WIS. STAT. § 908.03(3).

3

¶7    The circuit court overruled Carla's pre-hearing objection, concluding that Clarence's statements about his intentions were relevant and generally admissible under the hearsay exception in WIS. STAT. § 908.03(3), even if they were made after the joint accounts were created. However, the court left open the possibility that Carla could object to specific testimony as the hearing proceeded.

¶8    The following summary of facts is derived from the testimony and exhibits presented at the trial and is consistent with the circuit court's findings.

¶9    Clarence was born in 1936 and attended school through the eighth grade. He was a lifelong farmer and a longtime employee of the county. Clarence and his wife, Judy Klawitter, were married for many years and had five children— the four surviving daughters and a son. Judy managed their finances, and Clarence was not confident in his own ability to handle financial matters.

¶10   After Judy passed away in 1989, Clarence lived on his farm with his son, Brian Klawitter, who assisted him with the farm and with financial matters. Clarence also maintained a close relationship with Judy's sister, Joan, and they regularly conversed throughout the remainder of Clarence's life.

¶11   Brian passed away in 2010. Thereafter, Clarence continued to live on the farm with the assistance of his daughters. Carla and her husband, David Henke, lived nearby and helped Clarence more than his other daughters. Even so, Clarence was close with all of his daughters; according to Joan, Clarence never said "a bad thing about any of his children."

¶12   After Brian's death, Joan was "really concerned" about Clarence's ability to manage his finances on his own. Joan knew that Judy and then Brian had handled Clarence's finances during their lifetimes, and she "knew that [Clarence]

4

was not good with finances." During one conversation in 2011, Joan asked Clarence "how he was getting along," and he responded that the bank "had to help [him] at first after Judy passed away."[3] Joan told Clarence that, "with Brian gone," she thought that Clarence should ask "one of the girls … to go with [him to the bank] and have their name put on the checking account, the book, or at least on [his] account." Joan had done the same thing with her mother after she became disabled, and Joan wanted Clarence "to get somebody to help him if he needed it."

¶13 On April 6, 2011, Clarence called Carla and asked her to go to the bank with him so that he could put her name on two accounts. The first was a single-party checking account that Clarence opened in 2006. The second was a single-party savings account, which Clarence opened several days earlier on April 1, 2011.

¶14 At the bank that day, Clarence and Carla both signed a replacement signature card for each account, and the two cards were introduced as exhibits at trial. The signature cards identify Clarence as "Owner #1" and Carla as "Owner #2." Each card had several checkboxes to indicate whether the account would be designated as a "Joint Account," an "Authorized Signer (Agent) Designation," or another designation. The description next to the joint account designation provided: "This Account is jointly owned by the parties named hereon. Upon the death of any of them, ownership passes to the survivor(s)." (Emphasis omitted.) By contrast, the description next to the authorized signer designation provided: "Transactions regarding this account may be made by the agent(s) named below. No present or future ownership or right of survivorship is conferred by this designation." (Emphasis omitted.) On each of the signature cards, someone had

---

[3] Carla specifically objected to this statement as hearsay, and the court overruled the objection.

checked the box designating the account as a joint account, and the box next to the authorized signer designation was left unchecked.

¶15    The bank employee who assisted Clarence and Carla was a witness at the trial. She testified that she typically explains the account designations and the consequences of those designations to customers, but that she did not specifically remember her conversation with Clarence and Carla. Carla testified that the bank employee explained the different account designations before she and Clarence signed the cards.

¶16    Carla further testified that Clarence did not tell her why he was adding her name to the accounts, and that he never told her that he intended to make her a beneficiary. According to Carla, she understood that she was designated as an owner on the accounts so that "if my dad wanted me to write a check, I could write a check. He didn't explain anything or say anything otherwise."

¶17    The two accounts remained open for the next ten years, until Clarence's death in 2021. During that time, Carla took no action and made no use of the accounts. She did not make any deposits or withdrawals, nor did she pay attention to the account statements. The statements for both accounts were sent to Clarence alone, and Clarence never instructed Carla to do anything with the accounts. Carla testified that she did not think that she had the authority to use the funds in the accounts for her own personal purposes, but rather to assist her father if he needed assistance.

¶18    According to Jennifer's trial testimony, she saw one of Clarence's account statements and noticed Carla's name on the statement. This occurred after Brian passed away, probably around 2012 or 2013. Jennifer and Clarence had a brief conversation, in which Jennifer asked Clarence why Carla's name was on the

statement. According to Jennifer, Clarence responded: "[O]h, that's nothing. I just added her as power of attorney to my account, in case something happens to me, and I am not going to be able to write my own checks out." Jennifer asked whether that meant that Carla had "access to [Clarence's] money," and Clarence said: "[N]o, no, no, nothing like that.… [J]ust you know, for protection, in case I end up in the hospital or something like that and I can't write my own checks."[4]

¶19    In 2013, Clarence's daughters encouraged him to develop an estate plan and, at their urging, Clarence, Carla, and Brenda attended a meeting at the office of an estate planning attorney in February 2013. According to Brenda's trial testimony, Clarence "didn't want to be there" and "felt forced." Brenda testified that Clarence told the attorney that he wanted Carla to be "Number 1 for decision-making, if he had to go to the hospital or something," and that upon his death, he wanted the farm machinery to go to David, his four daughters to run the farm as a partnership, and the remaining property to be divided equally between his four daughters. The joint accounts were not discussed at this meeting.

¶20    Following the meeting, the attorney sent a proposed estate plan to Clarence. Its provisions were consistent with the above-described intentions that Clarence had expressed to the attorney during the meeting. The proposed plan did not mention the joint accounts that Clarence held with Carla.

¶21    Clarence never followed up with the attorney and never finalized the proposed plan or any other plan. Clarence told Carla that "it was not worth it, [that it was] too expensive." When Joan asked Clarence why he would not finalize an estate plan, Clarence said that he "was not going to do it," that he "was not going to

---

[4] Carla specifically objected to this testimony as hearsay, and the circuit court overruled the objection.

go back and give [the attorney] any money," and that he did not "need to fill … out" the paperwork from the attorney because "if I don't have a will, it is going to be divided equally anyway."[5]

¶22 The circuit court rendered its ruling at the close of the hearing. The court found that, based on the language on the replacement signature cards, Carla and Clarence had created joint accounts that presumptively entailed survivorship rights under WIS. STAT. § 705.04(1). However, the court also determined that the Estate had rebutted that presumption. It found that, despite the joint account designations, Clarence intended to create accounts of convenience, that he did not intend to make Carla a joint owner on the accounts during his lifetime, and that he did not intend for her alone to inherit the remaining sums upon his death.

¶23 The circuit court entered an order declaring the funds in the accounts to be assets of the Estate, which would be divided evenly among Clarence's daughters based on the laws of intestate succession. Carla appeals.

## DISCUSSION

¶24 The sole issue presented in this appeal is the ownership of the accounts that were held in Clarence's and Carla's names. According to Carla, the admissible evidence at the hearing was insufficient to clearly and convincingly prove that the accounts belonged to the Estate. We address Carla's challenge in two parts. We first address the law governing joint accounts, and then address Carla's challenges to the admissibility and sufficiency of the evidence.

---

[5] Carla specifically objected to the questioning of Carla and Joan about Clarence's reasons for not following through with the estate planning attorney, and the circuit court overruled her objections.

## I. Law Governing Joint Accounts

¶25 A "joint account" is an account that is "payable on request to one or more of 2 or more parties whether or not mention is made of any right of survivorship." WIS. STAT. § 705.01(4). Joint accounts are jointly owned by the parties to the account during their lifetimes, "without regard to the proportion of their respective contributions," and with each having a right to withdraw "any sum" without being "subject to inquiry by any person, including any other party to the account." WIS. STAT. § 705.03(1). Upon the death of one of the parties to a joint account, any "[s]ums remaining on deposit" pass to "the surviving party," independently of probate. WIS. STAT. § 705.04(1). This last concept is referred to as a "right of survivorship" or "survivorship rights."

¶26 As discussed, the Estate does not dispute that, under Wisconsin law, the language on the signature cards that Clarence and Carla signed was effective to create joint accounts with survivorship rights. *See* WIS. STAT. § 705.02(1)(a).[6] When parties to an account execute a signature card containing the language in § 705.02(1)(a), the law presumes that the language on the signature card governs and expresses the intention to create an account with joint ownership and survivorship rights. *See* WIS. STAT. §§ 705.03(1), 705.04(1).

---

[6] Specifically, WIS. STAT. § 705.02(1)(a), provides that:

> (1) Provisions in substantially the following form contained in a signature card … evidencing an account shall be effective to create the [joint account] when conspicuously printed or typewritten immediately above or adjacent to the place for the signatures of the parties to the account:

> (a) Joint account: "THIS ACCOUNT/CERTIFICATE OF DEPOSIT IS JOINTLY OWNED BY THE PARTIES NAMED HEREON. UPON THE DEATH OF ANY OF THEM, OWNERSHIP PASSES TO THE SURVIVOR(S)."

¶27     That said, accounts that are titled as "joint accounts" "can serve many purposes" and "take several forms." *See **Russ v. Russ***, 2007 WI 83, ¶61, 302 Wis. 2d 264, 734 N.W.2d 874 (Abrahamson, C.J., concurring) (citing WIS. STAT. §§ 705.01(4), 705.02(1)). The parties to the account may have intended to create precisely the type of joint account that the statutes presume—an account in which both parties have full access to and joint ownership of all funds in the account, and also have rights of survivorship. *See id.* In other instances, the parties may have intended the joint account to be a testamentary device with rights of survivorship, but without joint ownership during the parties' lifetimes. *See id.*[7]

¶28     In still other instances, the parties may have intended to create what is referred to as an "account[] of convenience." *See id.*; *see also **First Nat'l Bank of Janesville v. Ecke***, 16 Wis. 2d 480, 488, 114 N.W.2d 803 (1962); ***Plainse v. Engle***, 262 Wis. 506, 519, 56 N.W.2d 89 (1952), *modified on rehearing by* 262 Wis. 506, 57 N.W.2d 586 (1953). An account of convenience is a joint account that was created for the depositor's convenience. ***Russ***, 302 Wis. 2d 264, ¶61 (Abrahamson, C.J., concurring). During the depositor's lifetime, the funds belong solely to the depositor, and the other party can access the funds solely for the depositor's benefit, such as to pay the depositor's bills. *Id.*; *see also **First Nat'l Bank***, 16 Wis. 2d at 488 (describing the nature of a joint bank account for convenience as one in which an agency relationship is created); ***Michaels v. Kruke***, 26 Wis. 2d 382, 392-93, 132 N.W.2d 557 (1965) (describing the nature of such an account as one whereby a trust

---

[7] *See also **Zander v. Holly***, 1 Wis. 2d 300, 313-14, 84 N.W.2d 87 (1957) (concluding that a joint account was created that reserved to the depositor, an aunt, the complete right of withdrawal of the funds in the joint account created with her niece, but that the niece should have whatever remained in the account by survivorship); ***Michaels v. Kruke***, 26 Wis. 2d 382, 398, 132 N.W.2d 557 (1965) ("The reservation by [one party] of full control over the account during her lifetime, thus excluding [the other party] from any right of withdrawal, did not invalidate the survivorship feature of the joint account so as to make it an ineffective testamentary disposition.").

is imposed upon the other party). It appears that Wisconsin cases presume that "no rights of survivorship are intended" when the account is one of convenience. *See First Nat'l Bank*, 16 Wis. 2d at 488; *Plainse*, 262 Wis. at 519; *Michaels*, 26 Wis. 2d at 392-93.

¶29 In sum, although the language on the signature cards signed by Clarence and Carla gives rise to the presumptions that the intention was to create an account with both joint ownership and survivorship rights, both of those presumptions are rebuttable. It is the intention that motivated the creation of the account that ultimately governs. *First Nat'l Bank*, 16 Wis. 2d at 487 ("The underlying principle is to determine the intent of the depositor in establishing the account."). WISCONSIN STAT. § 705.03(1) provides that the presumption of joint ownership during the parties' lifetimes can be rebutted by "clear and convincing evidence of a different intention," and WIS. STAT. § 705.04(1) provides that the presumption of survivorship can be rebutted by "clear and convincing evidence of a different intention at the time the account is created."

¶30 Here, the sole issue is whether Clarence intended that Carla would have a right of survivorship.[8] The parties agree that the inquiry turns on Clarence's intention at the time he added Carla's name to what had previously been single-

---

[8] Carla and the Estate appear to agree that it is Clarence's intention, not Carla's intention, that matters for purpose of this appeal. The statutory language speaks of "a different intention at the time the account is created," WIS. STAT. § 705.04(1), and it would be reasonable to conclude that this language contemplates the mutual intentions of all parties to the joint account at the time of its creation as a joint account. Here, however, the parties focus exclusively on Clarence's intention, and Wisconsin cases that predate the enactment of § 705.04(1) have also focused on the intention of the deceased depositor. *See First Nat'l Bank of Janesville v. Ecke*, 16 Wis. 2d 480, 488, 114 N.W.2d 803 (1962); *Johnson v. Mielke*, 49 Wis. 2d 60, 77, 181 N.W.2d 503 (1970); *Gray v. Schultz*, 27 Wis. 2d 204, 209-10, 133 N.W.2d 816 (1965). Such a focus appears to be appropriate in a case like this, in which it was Clarence's decision to add Carla to the account, Clarence did not tell Carla why he added her to the account, and there was no evidence that Carla had any intention for the accounts that was independent of Clarence's intention.

party checking and savings accounts. *See **Reichel v. Jung***, 2000 WI App 151, ¶28, 237 Wis. 2d 853, 616 N.W.2d 118; ***Johnson v. Mielke***, 49 Wis. 2d 60, 77, 181 N.W.2d 503 (1970); ***First Nat'l Bank***, 16 Wis. 2d at 487-88. This is because a party's later contrary intentions about what the party would like to happen to the account after the party's death cannot alter the party's initial intention in favor of survivorship. *See, e.g.*, WIS. STAT. § 705.04(3); ***Reichel***, 237 Wis. 2d 853, ¶¶28, 30; ***Gray v. Schultz***, 27 Wis. 2d 204, 209, 133 N.W.2d 816 (1965). This is true even if those later contrary intentions are unequivocally expressed in a will or other written instrument.[9] Therefore, in this case, the Estate needed to prove that on April 6, 2011, when Clarence added Carla to the accounts, he intended to create an account of convenience and did not intend for Carla to have survivorship rights to the money remaining in the accounts after his death.

¶31 Although the parties appear to agree on the legal standard the Estate must satisfy to rebut the presumption raised by WIS. STAT. § 705.04(1), they disagree about the type of evidence that the Estate can use to satisfy that standard. Most prominently, Carla contends that it was improper for the circuit court to consider evidence "from times other than the time the account [was] created" in making the determination that Clarence intended to create accounts of convenience with no right of survivorship. She argues that evidence must predate or be contemporaneous to the creation of the joint account to be *relevant* to prove

---

[9] *See, e.g.*, WIS. STAT. § 705.04(3) ("a right of survivorship arising from the express terms of the account … cannot be changed by will"); *see also **Reichel v. Jung***, 2000 WI App 151, ¶¶28, 30, 237 Wis. 2d 853, 616 N.W.2d 118 (survivorship terms in a joint annuity agreement controlled over a later executed marital property agreement that classified the annuity as a single property to be included in the estate of the decedent); ***Gray***, 27 Wis. 2d at 209 ("efforts to alter the nature of the account after it was in existence are not controlling; the governing intention which the court must determine is that which prevailed" when the account was created).

Clarence's intention at the time an account was created and *admissible for that purpose*.

¶32 Carla's argument is nuanced, and it requires some unpacking. According to Carla, if Clarence made statements after the joint accounts were created that expressly asserted the intention that he had at the time the accounts were created, such statements might be relevant, but they would also be inadmissible hearsay. Conversely, Carla argues, if Clarence made statements after the joint accounts were created that expressed his intention at the time he made the statements, such statements would not be probative of the intention he had at the time the accounts were created and would therefore be irrelevant. This latter argument—that post-creation statements expressing a party's post-creation intention are irrelevant—is based on the principle that a later-executed will or marital property agreement cannot alter the survivorship feature of a joint account. Carla reasons that, if a later-executed written instrument cannot alter that feature, then any post-creation evidence of a party's post-creation intention regarding the accounts is also irrelevant and insufficient.

¶33 As for Carla's hearsay-based arguments about post-creation statements that assert a speaker's intention at the time a joint account was created, we address these arguments in the following section of this opinion. Turning to Carla's relevancy-based argument about post-creation statements that express the speaker's post-creation intention, we disagree for reasons we now explain.

¶34 As we have stated, the inquiry under WIS. STAT. § 705.04(1) turns on the intention for the joint account at the time it was created. However, it does not follow that evidence postdating the creation of the account which expresses the party's post-creation intention, is only probative of the party's post-creation

13

intention, and is therefore irrelevant to the inquiry. As one commentator has explained, the law of evidence "embraces the common sense assumption that mental states," including intentions, can "persist over time." 7 Daniel D. Blinka, WISCONSIN PRACTICE SERIES: WISCONSIN EVIDENCE § 801.306 at 772-73 (4th ed. 2017) (citing David H. Kaye et al., MCCORMICK ON EVIDENCE § 274 (7th ed. 2014)); Blinka, *supra*, § 803.301 at 871. Expressions of a person's then-existing state of mind are, "of course, probative of the [person's] mental state at the time." *Id.* However, the person's expression "may also be used to show that the same mental state existed prior to, or after," the utterance of that expression. *Id.* This concept is referred to as the doctrine of "continuity in time of states of mind." *Id.*

¶35 Applying this doctrine in the context of WIS. STAT. § 705.04(1), we conclude that, because a party's intention for a joint account may persist after its creation and may manifest in the party's post-creation statements and conduct, post-creation evidence of such manifestations may be relevant. Depending on the facts of a given case and the strength of the available evidence, a fact finder may be able to infer from a party's post-creation expressions of their post-creation intention that the party held the same intention at the time the account was created. Indeed, Wisconsin cases that were decided before the enactment of § 705.04(1) routinely considered evidence that postdated the creation of a joint account to be probative of the parties' intentions at the time the account was created.[10]

---

[10] WISCONSIN STAT. § 705.04(1) was enacted by 1973 Wis. Act 291. For cases that were decided prior to its enactment, *see, e.g.*, *Johnson*, 49 Wis. 2d at 77 ("Evidence subsequent to the establishment of the account may be relevant and probative of the intent at the time the account was created."); *Kohn v. Kynaston*, 43 Wis. 2d 520, 524, 168 N.W.2d 812 (1969) ("Evidence subsequent to the establishment of the account may be relevant and probative of the intent at the time of the creation of the [joint] tenancy and of its nature."). In *Johnson*, 49 Wis. 2d at 77, for example, the court considered the decedent's later statement that she added the survivor to assist

¶36    To the extent Carla is arguing that this principle no longer applies after the enactment of WIS. STAT. § 705.04(1), we disagree. Carla does not argue that the statute abrogates the common law. *See **Fuchsgruber v. Custom Accessories, Inc.**,* 2001 WI 81, ¶25, 244 Wis. 2d 758, 628 N.W.2d 833 ("A statute does not change the common law unless the legislative purpose to do so is clearly expressed in the language of the statute."). And there is no language in § 705.04(1) that expressly requires that evidence used to prove the intention at the time the account was created must predate or be contemporaneous to the creation of the account. The phrase "at the time the account is created" modifies the phrase "a different intention," and not the phrase "clear and convincing evidence." *See* § 705.04(1). Had the legislature intended to abrogate the common law and impose such a requirement, it would have provided that the presumption applies "unless there is clear and convincing evidence from the time the account was created of a different intention at that time."

¶37    To be sure, contemporaneous evidence such as a party's statements to bank employees or others of the intention that motivated the creation of a joint account may have greater probative value than post-creation evidence from months or years after the fact. Additionally, evidence that a party's intentions changed after creating a joint account may undermine any inference that the party's post-creation expressions of post-creation intention are probative of the party's intention at the time the account was created. However, these issues generally involve the weight that should be given to the evidence, which is a question that is generally reserved for the fact finder. Wisconsin law does not support the categorical exclusion of

her with paying her bills. In *First Nat'l Bank*, 16 Wis. 2d at 483-85, the court considered, among other things, statements the decedent made after the creation of the joint account that she wanted the survivor, and not her other relatives, to keep the remaining sums in the account if anything happened to her. And in *Gray*, 27 Wis. 2d at 209, and *Pfeifer v. Pfeifer*, 1 Wis. 2d 609, 610-13, 85 N.W.2d 370 (1957), our supreme court also considered the parties' subsequent use of the account.

evidence postdating the creation of a joint account on the ground that such evidence lacks any tendency to prove a party's intention at the time the account was created.

## II. The Circuit Court's Decision

¶38    Carla challenges the circuit court's determination that the Estate presented clear and convincing evidence that, at the time Clarence added Carla to the accounts, he intended to create accounts of convenience and did not intend for Carla to have a right of survivorship.  Carla argues that the court relied on inadmissible hearsay to make that determination, and that, with or without such evidence, the evidence was insufficient to rebut the presumption in WIS. STAT. § 705.04(1).  We first address Carla's arguments about hearsay and then, after determining which evidence was properly admitted, we assess Carla's argument that the admissible evidence was insufficient to support the court's determination.

### A. Hearsay

¶39    Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing," that is "offered in evidence to prove the truth of the matter asserted."  *See* WIS. STAT. § 908.01(3).  In this context, a "statement" is defined as "an oral or written assertion."  *See* § 908.01(1).  An "assertion," in turn, is "an expression of fact, opinion, or condition explicit or implicit in the words used by the speaker, as long as the speaker intended to express that fact, opinion, or condition."  *State v. Kutz*, 2003 WI App 205, ¶46, 267 Wis. 2d 531, 671 N.W.2d 600.  WISCONSIN STAT. § 908.02 bars the admission of hearsay except as otherwise provided in the rules of evidence.  *See* WIS. STAT. chs. 901-911 (comprising the Wisconsin Rules of Evidence).  If an out-of-court statement is offered to prove the truth of a matter the declarant intended to assert, it is admissible only if it falls within a recognized hearsay exception.

16

¶40    One such exception is found in WIS. STAT. § 908.03(3). Under that exception, statements of the declarant's then-existing mental, emotional, or physical condition are admissible, regardless of whether the declarant is or is not available to testify. According to its express terms, § 908.03(3) allows the admission of out-of-court statements of "the declarant's then existing state of mind, emotion, sensation, or physical condition, such as intent, plan, motive, design, mental feeling, pain, and bodily health." That is, the exception covers a declarant's statements which assert the declarant's state of mind (including the declarant's intention) at the time the statement was made, if the statement was offered to prove that that was the declarant's state of mind at the time. *Kutz*, 267 Wis. 2d 531, ¶57. It does not cover statements which assert the declarant's past state of mind.

¶41    WISCONSIN STAT. § 908.03(3) also unequivocally provides that certain assertions of "memory or belief" are not covered by this hearsay exception. Specifically, § 908.03(3) excludes the admission of "statement[s] of memory or belief to prove the fact remembered or believed."[11] Thus, statements of a declarant's present belief or memory are inadmissible to prove the truth of events that have occurred in the past. By way of example, a decedent's out-of-court statement that her husband had threatened her might be admissible to prove her then-existing state of mind—that she was afraid of her husband. *Kutz*, 267 Wis. 2d 531, ¶¶58-60 (citing *State v. Jackson*, 187 Wis. 2d 431, 436, 523 N.W.2d 126 (Ct. App. 1994)). However, the decedent's out-of-court statement would not be admissible to prove

---

[11] There is one exception to this rule (effectively, an exception to the exception to the hearsay exception), but there is no argument that it applies here. Under WIS. STAT. § 908.03(3), an out-of-court statement of "memory or belief" that "relates to the execution, revocation, identification, or terms of [the] declarant's will" is admissible "to prove the fact remembered or believed."

17

that the decedent's husband had in fact threatened her. *Kutz*, 267 Wis. 2d 531, ¶¶60, 62.

¶42 The decision to admit or exclude evidence is generally a matter within the circuit court's discretion. *See State v. Joyner*, 2002 WI App 250, ¶16, 258 Wis. 2d 249, 653 N.W.2d 290. We will not reverse the court's evidentiary ruling "if the court properly exercises its discretion by applying the correct legal standard to the relevant facts of record." *Kutz*, 267 Wis. 2d 531, ¶33. If the court admitted evidence based on an erroneous view of the law, it has exceeded its discretion. *Id.* However, we may affirm the court's ruling if, based on our review of the record, we conclude that the statement is admissible on an alternative basis. *Id.*

¶43 During the hearing in this case, the circuit court admitted several of Clarence's out-of-court statements, citing the hearsay exception in WIS. STAT. § 908.03(3). These statements, all made by Clarence, fall into three categories: (1) his statement to Joan about the bank assisting him after Judy passed away; (2) his statements to Joan and Carla in 2013, in which he explained why he did not follow through with the estate planning attorney; and (3) his statements to Jennifer in 2012 or 2013, in which he responded to Jennifer's questions about seeing Carla's name on an account statement. Carla argues that all three categories of statements constitute inadmissible hearsay; and in response, the Estate argues (among other things) that Clarence's statements are not hearsay or they are admissible under the hearsay exception in § 908.03(3).[12] We address each category of statements in turn.

---

[12] We summarily address and reject two arguments that the Estate might be making in regards to the statements Carla objected to as hearsay.

1.

¶44    Carla challenges the admission of Clarence's statement to Joan that "the bank had to help [him] out at first after Judy passed away." Carla argues that this statement is hearsay, and that it does not fall into the exception set forth in WIS. STAT. § 908.03(3).

¶45    We agree. Clarence's out-of-court statement was not an expression of Clarence's then-existing state of mind. It was instead an assertion about the occurrence of a past event—that is, an assertion that Clarence remembered something that happened in the past. The Estate does not address the admissibility of this statement in its briefing. It does not argue that it offered the statement for any purpose other than to prove the truth of the fact Clarence remembered. *See* WIS. STAT. § 908.03(3). Nor does it argue that it was admissible under a different exception. Under these circumstances, we deem this point conceded. *See **United***

First, the Estate appears to argue that Clarence's statements are admissible because they are highly probative to the inquiry under WIS. STAT. § 705.04(1). It is unclear if the Estate is arguing that § 705.04(1) is in itself a hearsay exception, or if it is arguing that offering out-of-court statements to prove the declarant's intention at the time the account was created constitutes a non-hearsay purpose. Either way, we disagree. Subsection 705.04(1) is not a rule of evidence. If a proponent is offering a declarant's assertion of intention to prove that that was in fact the declarant's intention, then the statement is hearsay. No matter how relevant such a statement may be to the inquiry under § 705.04(1), it must still fall within a hearsay exception to be admissible.

Second, the Estate appears to be arguing that, regardless of the rules of evidence, any statement by a deceased declarant is now admissible because the "dead man's statute," which was formerly found in WIS. STAT. §§ 885.16 and 885.17 (2015-16), has been repealed. *See* S. CT. ORDER 16-01 (Feb. 21, 2017). We disagree. The dead man's statute was a rule of witness competency that "disqualifie[d] a witness to a transaction or communication with a decedent from testifying about that transaction or communication in his or her favor" or in the favor of the party presenting the witness's testimony. ***Bell v. Neugart***, 2002 WI App 180, ¶17, 256 Wis. 2d 969, 650 N.W.2d 52. However, the repeal of the dead man's statute did not repeal the rules of evidence as applied to statements by deceased declarants. Although the repeal of the dead man's statute means that interested witnesses are no longer considered legally "incompetent" to testify about transactions or communications with a decedent, it does not change the fact that such testimony will in some circumstances constitute hearsay and be subject to the rules of evidence governing hearsay.

*Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (failure to respond to an argument may be taken as a concession).

¶46     However, "[n]o judgment shall be reversed or set aside … [unless] it shall appear that the error complained of has affected the substantial rights of the [appealing] party …." WIS. STAT. § 805.18(2); *see also **Nommensen v. American Continental Ins. Co.***, 2001 WI 112, ¶49, 246 Wis. 2d 132, 629 N.W.2d 301 (the party alleging error has the burden to show its substantial rights have been violated). An error affects the substantial rights of a party if there is a "reasonable possibility" that it "contributed to the outcome of the action or proceeding at issue." *Id.*, ¶52.

¶47     Here, we conclude that the erroneous admission of this statement did not affect Carla's substantial rights for two reasons.  First, although the circuit court found that Clarence was not well versed in banking, there was ample non-hearsay evidence on this point, and no evidence to the contrary.  This non-hearsay evidence included Joan's testimony about Clarence's shortcomings in this area, and Joan's opinion was informed by her decades-long relationship with Clarence and his family.  Second, the truth of the matter asserted in this statement—that the bank had provided Clarence with assistance at one point in the past—had no direct probative value to the dispositive issue in the case, which was whether Clarence intended Carla to have a right of survivorship at the time he added her name to the accounts. We therefore conclude that the erroneous admission of this statement did not contribute to the outcome of the proceeding.

2.

¶48     Carla also challenges the admission of two statements that Clarence made in 2013, in which he explained why he did not follow through with the estate planning attorney to finalize the plan that the attorney had prepared.  According to

Carla, Clarence said that "it was not worth it" and was "too expensive." And according to Joan, Clarence said something to the effect of "I don't need to fill it out," and "if I don't have a will, it is going to be divided equally anyway."

¶49 Carla asserts that these statements are hearsay and are inadmissible under WIS. STAT. § 908.03(3) because they assert "the cause of a past event" and have "nothing to do with [Clarence's] then-existing state of mind." We disagree. Clarence's statements were admissible, either because they are not hearsay and were admitted as circumstantial evidence of Clarence's state of mind in 2013, or, if hearsay, because they were admissible under § 908.03(3) as expressions of his then-existing state of mind.

¶50 We begin by observing that Clarence's statements expressly asserted certain facts—that he did not need to "fill out" an estate plan; that it was "too expensive" to do so; and that his assets would be divided evenly if he died intestate. However, the Estate does not appear to have offered these statements for the truth of those express assertions. *See Caccitolo v. State*, 69 Wis. 2d 102, 109, 230 N.W.2d 139 (1975) (declarant's statement that "everything was all right" was "not introduced for the purpose of proving that in fact 'everything was all right.'").

¶51 It instead appears that the Estate introduced Clarence's statements to prove the truth of other relevant matters that Clarence either intended to assert, or that could be inferred from the statements. *See* Blinka, *supra*, § 801.302 at 766. (cautioning practitioners to distinguish between assertions that the declarant intends to communicate and the range of reasonable inferences that can be drawn from a statement). These other matters include Clarence's 2013 belief that the laws of intestate succession would achieve the same result as the plan the attorney had

proposed, and Clarence's desire in 2013 that his assets would be split evenly among his daughters.

¶52    Whether these statements are hearsay depends on whether Clarence intended to assert these matters when he made these statements to Carla and to Joan. *See Kutz*, 267 Wis. 2d 531, ¶46. Yet, we need not resolve what Clarence intended to communicate because, either way, the statements are admissible. If Clarence did not intend to assert that, as of 2013, he wanted his assets to be split evenly among his daughters and he believed that the laws of intestate succession would achieve that result, then the statements are not hearsay, and they are admissible as circumstantial evidence of Clarence's state of mind in 2013. *Id.* Alternatively, if Clarence did intend to assert these matters, the statements are hearsay, but they are admissible under the hearsay exception in Wis. Stat. § 908.03(3) because they assert Clarence's then-existing intention and belief and were offered to prove his then-existing desire and belief. *Id.*, ¶57.

¶53    Carla argues that, at best, Clarence's statements establish his intention in 2013, and that what really matters to the inquiry under Wis. Stat. § 705.04(1) is what Clarence intended in 2011, "at the time the account [was] created." To the extent that Carla is arguing that Clarence's state of mind in 2013 is irrelevant and his statements should be excluded on that basis, we disagree for reasons discussed at length above. Although the ultimate issue under § 705.04(1) is Clarence's intention in 2011, that does not mean that evidence of Clarence's post-creation beliefs and desires has no conceivable bearing on that ultimate issue. Based on the doctrine of continuity in time of states of mind, "[a] statement of a 'then existing' state of mind" may "be used to show that the same mental state existed prior to, or after, the making of the statement." Blinka, *supra*, §§ 801.306 at 772-73, 803.301 at 871.

22

¶54   Here, Clarence's beliefs and desires in 2013 had some tendency to prove what his intention had been in 2011 based on the following chain of inferences. If Clarence wanted his assets to be evenly divided among his daughters in 2013, then a fact finder could infer that he had the same view in 2011. And, if Clarence had the same view in 2011, then the fact finder could infer that it was less likely that, when he added Carla as joint owner to the accounts, he intended for her to become the sole owner of the funds in the accounts upon his death. To be sure, the probative weight of this chain of inferences might be greater if Clarence made these statements closer in time to the creation of the joint accounts. But that is a matter of the weight that the fact finder should give to the evidence. It does not mean that the evidence has no tendency to prove what Clarence's intention was in 2011 when he added Carla to the accounts.

3.

¶55   Finally, Carla challenges the admission of the two statements Clarence made to Jennifer in 2012 or 2013 regarding the joint accounts. According to Jennifer, she asked Clarence why Carla's name appeared on the accounts and he responded: "[O]h, that's nothing. I just added her as power of attorney to my account, in case something happens to me, and I am not going to be able to write my own checks out." Jennifer then asked whether Carla "has access to [his] money," and Clarence responded: "[N]o, no, no, nothing like that.… [J]ust, you know, for protection, in case I end up in the hospital or something like that and I can't write my own checks."

¶56   For reasons we now explain, we conclude that Clarence's second statement to Jennifer was admissible to prove Clarence's state of mind at the time the statement was made, either because it was not hearsay, or because, if hearsay, it

was admissible under WIS. STAT. § 908.03(3). We further conclude that his first statement to Jennifer was inadmissible hearsay, but that its erroneous admission did not affect Carla's substantial rights.

¶57 The second statement—that Carla did not have access to Clarence's money and was authorized to write checks only if Clarence ended up in the hospital—is phrased as an express assertion of fact. This assertion of fact did not, however, conform to reality—the signature cards Clarence and Carla signed unequivocally provided otherwise, and we do not understand the Estate to have introduced this statement to prove the truth of its express assertion.

¶58 Instead, it appears that the Estate introduced the statement to prove Clarence's then-existing beliefs about the nature of the joint accounts and Carla's access to the sums in the accounts, and it was admissible for that purpose. If Clarence did not intend to assert those beliefs, his statement was not hearsay and was not objectionable on that basis. Alternatively, if Clarence did intend to assert those beliefs, the hearsay statement was admissible under WIS. STAT. § 908.03(3) as a statement of Clarence's then-existing state of mind. Either way, the statement was admissible. And, based on reasoning discussed above, Clarence's post-creation state of mind at the time of his 2012 or 2013 conversation with Jennifer had at least some tendency to prove his intention in 2011, when the joint accounts were created.

¶59 Turning to Clarence's first statement to Jennifer—that he added Carla to the accounts as power of attorney in case something happened to him and he could not write his own checks—this statement contains express assertions of fact. One such assertion is about Carla's legal status with regard to the account: that Clarence made Carla his power of attorney. However, that assertion was not actually correct, and we do not understand the Estate to have sought to admit

Clarence's statement for the truth of Carla's status as power of attorney. Instead, we understand that the Estate sought to admit Clarence's first statement to prove what Clarence's intention had been when he added Carla to the accounts in 2011. Unlike his second statement to Jennifer, discussed above, we conclude that this first statement was offered to prove the truth of a matter Clarence intended to assert, and was inadmissible for that purpose.

¶60    Clarence's first statement to Jennifer contains an assertion about his past intention—that the reason Clarence "added her" to the accounts was in case something happened to him and he was not able to write his own checks. Even if it does not expressly assert Clarence's past intention, it is implicit in the words he used. Further, it is apparent from the context in which Clarence made the statement that that was what he intended to assert in response to Jennifer's inquiry. *See **Kutz**,* 267 Wis. 2d 531, ¶46 ("Sometimes it will be evident from the utterance itself that the speaker necessarily intended an implicit assertion."). The Estate sought to admit this statement for the truth of Clarence's assertion about his past intention, which renders the statement hearsay. And, although the statement expressly asserts Clarence's state of mind, it was not admissible pursuant to WIS. STAT. § 908.03(3) because it was not a statement of Clarence's then-existing state of mind. Unlike the second statement, Clarence's first statement to Jennifer was a post-creation expression of his pre-creation intention: it was worded in the past tense and explained his past reasons for doing something in 2011, and it was not admissible

for that purpose under § 908.03(3).[13]  When Carla objected to this testimony during the hearing, the circuit court should have sustained the objection.

¶61     However, we conclude that Carla has not shown that the erroneous admission of Clarence's first statement to Jennifer affected Carla's substantial rights.  *See* WIS. STAT. § 805.18(2); ***Nommensen***, 246 Wis. 2d 132, ¶49.  As explained in greater detail in the following section, there was significant admissible non-hearsay evidence from which the circuit court could infer that, despite designating the accounts as joint accounts on the signature cards, Clarence's intention in 2011 was to create accounts of convenience without survivorship rights. Additionally, there was significant admissible non-hearsay evidence from which the court could reasonably infer that, after the fact, that was what Clarence believed he had done.  The improperly admitted evidence was essentially cumulative of the admissible evidence, and there was no evidence to the contrary.  We therefore conclude that there is no reasonable probability that the erroneous admission of Clarence's first statement to Jennifer contributed to the outcome of the proceeding.

### B. Sufficiency of the Evidence

¶62     We now address whether the admissible evidence presented at the hearing was sufficient to prove that the joint accounts belong to the Estate.

¶63     Neither Carla nor the Estate explicitly addresses the standard of review that applies to a circuit court's determination under WIS. STAT. § 705.04(1). Both appear to assume that this case presents a question of fact subject to the clearly

---

[13]  Professor Blinka has stated that, in effect, the WIS. STAT. § 908.03(3) exception requires that the out-of-court statement "be worded in the present tense."  7 Daniel D. Blinka, WISCONSIN PRACTICE SERIES: WISCONSIN EVIDENCE § 803.301 at 871 (4th ed. 2017) (contrasting the statement "I am feeling ill," which is admissible under § 908.03(3) with the statement "I felt ill," which is not admissible under § 908.03(3) because it describes how the declarant felt in the past).

erroneous standard of review. There is no case law following the enactment of § 705.04 that explicitly addresses the applicable standard of review. Prior to its enactment, our cases appeared to treat the ultimate determination of the nature of a joint account as an issue of law that was primarily informed by the parties' intentions, which our cases treated as a question of fact subject to the clearly erroneous standard of review.[14]

¶64    We conclude that this same standard of review applies following the enactment of WIS. STAT. § 705.04. And here, Carla and the Estate agree that the ultimate determination of the nature of the accounts turns on Clarence's intention at the time he added Carla to the accounts. This is a question of fact, and we will uphold the circuit court's findings of fact unless they are clearly erroneous. *Outagamie Cnty. v. Melanie L.*, 2013 WI 67, ¶38, 349 Wis. 2d 148, 833 N.W.2d 607. A finding of fact is not clearly erroneous merely because a different fact finder could have drawn different inferences from the record. *State v. Wenk*, 2001 WI App 268, ¶8, 248 Wis. 2d 714, 637 N.W.2d 417.

¶65    Here, the circuit court found that, at the time the joint accounts were created in 2011, Clarence intended them to be accounts of convenience, and did not intend for Carla to have a right of survivorship. The court made this finding despite

---

[14] *See Roth v. Filipek*, 25 Wis. 2d 528, 533, 131 N.W.2d 286 (1964) (upholding the circuit court's finding that the husband "never intended to make a gift of his earnings to his wife" and concluding that, under the circumstances, the court erred when it determined that there was a right of survivorship in the account that had been opened in both of their names); *Kohn*, 43 Wis. 2d at 524 ("[I]n *Kelberger*, … we definitely established that the nature of a joint deposit depended primarily upon the intention of the depositor and this was a question of fact." (citing *Kelberger v. First Federal S. & L. Ass'n*, 270 Wis. 434, 71 N.W.2d 257 (1955))); *Pfeifer*, 1 Wis. 2d at 611-12 ("The intention is to be determined by the trier of the fact from all the evidence."); *Gray*, 27 Wis. 2d at 209 ("The trial court found that [the wife] added her husband's name to the account 'with the intention of reserving to herself the right to eliminate his name from said account at any time without procuring his consent[,]'" but "[t]he record [was] devoid of sufficient proof to support this finding.").

the undisputed fact that someone checked boxes on the signature cards designating the accounts as joint accounts with rights of survivorship, and despite the bank employee's testimony that she typically explains the consequences of account designations to customers when they open accounts.

¶66    Based on our review of the record, we conclude that the circuit court's finding is not clearly erroneous.  It is comprised of reasonable inferences drawn from the admissible evidence regarding the circumstances surrounding the creation of the accounts; Carla's contemporaneous understanding of the accounts; the parties' subsequent use of the accounts; and later post-creation expressions of Clarence's post-creation intention.

¶67    The following evidence about the circumstances surrounding the creation of the joint accounts supports the circuit court's finding regarding Clarence's intention.   Both accounts were originally opened as single-party accounts, with Clarence named as the sole owner and depositor.  *See Johnson*, 49 Wis. 2d at 78 (considering it significant that the accounts in question were originally opened by a single depositor, and not as joint accounts).  Clarence added Carla as a joint owner several months after his son Brian, who had been assisting him with his finances, passed away, and at a time when Clarence was elderly, living alone, and lacked confidence regarding his ability to handle financial matters.  *See id.* (finding depositor intended to create account of convenience where evidence showed that she added surviving party after learning she had cancer and spending considerable amount of time in the hospital).

¶68    Perhaps most significant is the timing and contents of a conversation between Clarence and Joan in 2011, after Brian died.  Joan was concerned about Clarence's ability to manage financial matters by himself, and Joan advised

Clarence to add "one of the girls" to the accounts so that she could assist him with writing checks if he ever needed the assistance. It appears that Clarence added Carla to the accounts shortly after he had this conversation with Joan.

¶69 From all of this evidence, the circuit court could have reasonably inferred that Clarence followed through on Joan's advice to add one of his daughters to the accounts and to create accounts of convenience. It could further reasonably infer that Clarence selected Carla based on her proximity to his farm. The court could have reasonably inferred that the designations on the signature cards were a mistake, and did not reflect Clarence's true intention at the time the designations were made. And indeed, the court appeared to place great weight on the evidence about this conversation between Clarence and Joan: "While I appreciate the fact that there was testimony today [from the bank employee and Carla] of what the different accounts were, I also heard testimony [from Joan] that it was the intention to put one of the girls on the account in case he needed help paying his bills, and so I think that is the important point here."

¶70 The circuit court could also have reasonably inferred that Clarence intended to create an account of convenience without survivorship rights based on Carla's contemporaneous understanding of the accounts. Carla testified that, at the time Clarence added her to the accounts, she understood that the change in status would allow her to write checks on Clarence's behalf and to pay his bills if he ever needed that assistance. She also testified that Clarence never told her he intended to make her a beneficiary of the account. *See id.* (finding account of convenience when surviving party testified that the reason the account was changed was so that he would be able to write checks to pay depositor's bills); *contrast **Zander v. Holly**, 1 Wis. 2d 300, 313, 84 N.W.2d 87 (1957) (finding that aunt intended to create a joint account with no joint ownership but with a right of survivorship in favor of her

29

niece, who testified that it was understood that the niece was to have no right to the property except upon her aunt's death).

¶71 Clarence's and Carla's subsequent use (or non-use) of the accounts also supports the circuit court's finding. Clarence alone received the account statements, and he alone deposited and withdrew money into the accounts. Carla testified that she did not believe she was authorized to use any of the funds for her own benefit, and there was no evidence that she did so. *See Johnson*, 49 Wis. 2d at 78 (finding account of convenience where there was no evidence the surviving party made any withdrawals for his own benefit).

¶72 Additionally, evidence postdating the creation of the joint accounts buttressed the circuit court's finding that Clarence intended to create accounts of convenience at the time he created the accounts. Among other things, there was evidence from the meeting with the estate planning attorney about Clarence's wishes upon his death. The evidence from this meeting supported a conclusion that in 2013, apart from some farm equipment that Clarence wanted to go to Carla's husband, Clarence wanted his assets to be evenly divided between his daughters. Carla does not challenge the admissibility of any of the evidence about this meeting on appeal. Based on the doctrine of continuity in time of states of mind and the absence of any evidence of a change of heart on Clarence's part, the circuit court could have reasonably inferred that Clarence held the same beliefs in 2011 when he added Carla to the accounts.

¶73 Finally, as discussed in greater detail above, the admissible evidence regarding Clarence's conversations with Jennifer, Carla, and Joan in 2012 and 2013 lent additional support to the circuit court's finding that Clarence intended to create accounts of convenience at the time he added Carla's name to the accounts.

¶74 Carla makes a series of arguments that the circuit court should have disregarded certain evidence, that it should not have credited the testimony of interested witnesses, or that it should have drawn different inferences from the available evidence.[15] These arguments are all foreclosed by the standard of review and our determination that the inferences that the court did make were reasonable. *See* **Wenk**, 248 Wis. 2d 714, ¶8 (that a different fact finder could have drawn different inferences from the record does not render the circuit court's findings clearly erroneous). Carla also argues that, even if the evidence proved that Clarence did not intend to create accounts with joint ownership during his lifetime, the evidence was not inconsistent with an intention in favor of survivorship. Yet, the circuit court specifically found that Clarence intended that the account "would eventually be split equally by his children," and Carla has not shown us that this finding is clearly erroneous.

¶75 In sum, the circuit court's finding that Clarence intended to create accounts of convenience with no right of survivorship for Carla is not clearly erroneous. We therefore conclude that the circuit court did not err when it determined that the accounts belong to the Estate.

*By the Court.*—Order affirmed.

---

[15] For example, Carla argues that the circuit court should have disregarded the proposed estate plan as evidence of Clarence's intent in 2013 because Clarence did not finalize the plan; that the court should not have credited Jennifer's testimony about Clarence's statements regarding the accounts because Jennifer was an interested witness; that, if anything, the subsequent use of the accounts undermines any inference that Clarence intended to create accounts of convenience because she never assisted Clarence with financial matters and Clarence never instructed her to write checks for him or to pay his bills using the accounts; and that Clarence's general intention for his assets to be split evenly among his daughters was not inconsistent with an intention that Carla alone would inherit funds remaining in the accounts, which comprised just eight percent of Clarence's estate.